### KING *against* BARDEAU and Wife.

Where a sale at auction is *bona fide,* and the title is good, and the quantity of land the same, and the description of it substantially true, though, in a slight degree, defective or variant, a specific performance of the contract will be decreed.

As where two adjoining lots of land were sold together, in one parcel, for one price, and on one of the lots were buildings, which projected two feet on the other lot: *Held,* that this was not so material a defect in the subject, or variation from the terms of the description at the sale, as would entitle the purchaser to abandon the contract.

But, as the projection was not so obviously visible, as to conclude the purchaser, if he had exercised ordinary vigilance, and, as the vendor, in the advertisement of sale, described the buildings as being on one of the lots, the purchaser was entitled to *compensation* for any diminution of value arising from the projection upon the other lot, to be deducted from the price.

*March* 13th. PETITION of *John Whitehead,* a purchaser at the master's sale, under a decree in this cause, on the foreclosure of a mortgage. The mortgaged premises, which were sold under an order of the 6th of *June,* 1821, pursuant to public advertisement and notice, consisted of two lots, No. 42 and No. 43, on *Broome-street,* each 25 feet wide, in front and rear, No. 42, being 100 feet deep, and the other 75 feet deep. There were two buildings on lot No. 42, one in front and the other in the rear, which projected on lot 43, about 20 inches. The petitioner stated, that his object in

making the purchase, was to build on the *vacant* lot, a house 22 feet wide, leaving an alley three feet wide to the rear, where he intended to build a stable. That he was, at the time of sale, unacquainted with the premises, not having examined them until after the purchase; but relied on the advertisement and declaration of the auctioneer, that the premises were free from all encumbrances, except a lease of the lot on which the buildings were situated. That after the sale, he objected to take the purchase, on account of the buildings encroaching on the vacant lot. That in *November* last, it was referred to a master to inquire and report whether a good and sufficient title could be made to the petitioner. That on the inquiry, the master examined several witnesses, who were of opinion, that the value of the premises was diminished, by the projection of the buildings, from 100 to 200 dollars. That the master reported the title good, without deciding upon the evidence as to the damage arising from the encroachment of the buildings, and refused to report specially the facts, not deeming himself authorized to inquire relative to the encumbrance and encroachment of the buildings on this lot upon the other. The petitioner *prayed*, that the master might be directed to receive testimony as to any encumbrance upon the lots, separately, and to report his opinion thereon.

The master, in his report of the sale, stated, that the terms of the sale, which were made known and proclaimed at the auction, were, that the mortgaged premises were to be sold free of all taxes, assessments, and encumbrances, except a lease upon lot No. 42, which would expire on the 1st of *May*, 1828, the conditions of which were stated; and that the *two lots would be sold together, as one lot or parcel.* That the premises were sold, accordingly, in one lot, to the petitioner, as the highest bidder, for 1400 dollars. That after the sale, the petitioner said he could not pay the ten per cent., required by the condition of sale, and

1822.
KING
v.
BARDEAU.

that his friends said that he had made a bad bargain. That he, afterwards, objected to take the purchase, because the buildings on lot No. 42 encroached on lot 43.

The master further reported, that at the sale, he had no knowledge of the encroachment of the buildings, except from the assertion of a person owning the adjacent lot, in the rear of 43, who mentioned, incidentally, a day or two before the sale, that the building in the rear of lot 42, encroached a little on his lot, as well as on 43. That he did not think it necessary to mention the circumstance at the sale, as both lots were to be sold together, as one parcel; that he had inquired into the value of the premises, and found that they were well worth 1400 dollars.

The master, on the 6th of *March*, pursuant to the order of the 16th of *November* last, reported, that he had heard the purchaser, and taken proof, &c. That a good and sufficient title to a part of the premises in possession, and a good and sufficient title to the residue in reversion, after the expiration of a lease for a term of years, subject to which, expressly, the premises were sold, could be made; and the mortgaged premises, as now enclosed, and may be conveyed, are of the same dimensions as mentioned in the advertisement of sale.

*March* 12*th*.    S. *M. Hopkins*, in support of the prayer of the petition. He cited *Peake's N. P. Cases*, 115. *Sugden's Law of Vendors*, 1, 2. 123. 197. 199.    13 *Vesey*, 81. 427.    10 *Vesey*, 505.    1 *Vesey*, jr. 226.

S. *Jones*, and *E. W. King*, contra.    They cited 1 *Madd. Ch.* 348.    5 *Vesey*, 508.

THE CHANCELLOR.    This sale was marked by good faith.    It was unknown to the plaintiff, and to the master, at the sale, as well as to the purchaser, that the front building on lot 42, projected over upon lot 43.    The observation that was made to the master, a few days before the

sale, that the building in the rear of the lot encroached in a very small degree on the neighbouring ground, was too light and trivial a circumstance to affect the *bona fides* of the transaction. The purchaser was informed at the sale, and it was one of the terms of sale repeatedly read over, and publicly proclaimed, that the two lots would be sold together as one lot or parcel; and that they were free of all encumbrances, except the lease upon lot 42. The terms of that lease, and the disposition of the buildings at the expiration of it, under the covenants in the lease, were also explained. But the buildings were stated to be on lot 42, and it turns out that they do project a little over upon lot 43, and this is the variation in the condition or quality of the lots, which, it is contended, ought to vacate the sale. As the purchaser purchased both the lots together for one consolidated price, and as one entire parcel of land, it would seem not to be very material to him if the buildings on one lot did encroach a few inches on the other. But he says he purchased with intention to build a house upon the vacant lot, twenty-two feet wide, leaving an alley of three feet to pass to the rear of his lot. The disappointment in the case, then, is, that he will be obliged to build his house two feet narrower, if he intends to have the alley of the width of three feet. He is not disappointed in the main object of his purchase. He has the lots of the dimensions described, and with a perfect title, but his house will be a little narrower, if he will not contract his alley, or will not wait until the lease expires, or will not compel the tenant to withdraw his buildings on to lot 42.

This is clearly not such a material defect in the subject, or variation from the terms of the description at the sale, as will permit the purchaser to abandon his contract. If we were to allow such very nice and critical objections to prevail, we should expose to great hazard the efficacy and value of public judicial sales. If the sale be fair, and the

1822.

KING
v.
BARDEAU.

title good, and the quantity of land exist, and the sub-stance of the description be true, (and all those circum-stances exist in this case,) it is as much as ought to be ex-pected or required.   Some care and vigilance must be ex-acted of the purchaser.   In this case the purchaser lived near the lots, and they were open to his daily examination; and one of the witnesses says, he might have observed by the eye, without even the trouble of measurement, that the house  on  the  front  of  lot 42  projected  a  little  upon lot 43.

In *Calcraft* v. *Roebuck*, (1 *Vesey*, jr. 221.) a farm sold at auction was advertised as a freehold estate, consisting of about 186 acres, of which 45 acres were described to be a compact farm, and the rest a park.   It turned out, that two acres in the centre of the park were not freehold property, but land held at will only.   On a bill for a specific per-formance, Lord *Thurlow* observed, that where an estate was sold at auction, it was difficult to state specifically all the little particulars relative to the quantity, title, and situ-ation of the estate, so as not to call for some allowance and consideration, when the bargain comes to be executed. He considered that the binding force of the contract, and the consideration of enforcing it, depended essentially upon the good faith with which it was made.   In that case he gave the party some compensation for the failure of title as to the two acres, and referred it to a master to consider what, under all the circumstances, ought to be allowed as a de-duction from the price, when the money ought to have been paid.

The *English* rule has been very strict in requiring the specific performance of these sales at auction, when the case was free from misrepresentation and fraud; and it casts upon the purchaser the duty of informing himself of mat-ters within his means of information, in respect to the qual-ity, condition, situation, and circumstances of the subject sold.   Thus, in *Oldfield* v. *Round*, (5 *Vesey*, 508.) there

was a bill for a specific performance of an agreement to purchase a meadow sold at auction. The defendant objected, that the premises were described as a meadow consisting of 15 acres, without taking notice of a footpath across it. But, Lord *Loughborough*, while he admitted that the meadow was very much the worse for a road going through it, said he could not help the carelessness of the purchaser who does not choose to inquire, and that the path in that case was not a latent defect. He, accordingly, decreed a specific performance, with costs. This case was, afterwards, shaken by Lord *Manners*, (*Ellard* v. *Lord Llandaff*, 1 *Ball & Beatty*, 241.) who said, it was not well received at the time, though he admitted, that the purchaser, in that case, if he had used ordinary caution, would have discovered the easement. In *Dyer* v. *Hargrave*, (10 *Vesey*, 505.) there was a bill also for a specific performance of a purchase at auction. The particular preceding the sale described the house as in good repair, and that the farm was all within a ring fence. The defendant objected, on the ground, that the description was not true. It was admitted, that there was a variation from the description, but a minute examination might have discovered the defect. The Master of the Rolls decreed a performance, and said it was much too late to contend, that every variance from the description would enable a man to resist the performance. If he gets substantially that for which he bargains, he must take a compensation for a deficiency in the value.

This last case establishes, what I apprehend to be the true doctrine on the subject; and many of the old cases, which required a performance when the subject was substantially different from what it was supposed to be, have been justly questioned. Lord *Eldon*, in *Drewe* v. *Hanson*, (6 *Vesey*, 678.) mentioned a number of hard cases in which performance had been enforced, though there was a very essential variance between the actual, and the supposed

circumstances of the subject, and when those circumstances were wanting, which were the strong inducement to the contract. The counsel, in 10 *Vesey*, 507., considered those cases as going to an excessive length upon the point of compensation; and Lord *Erskine*, afterwards, declared, (*Halsey* v. *Grant*, 13 *Vesey*, 78., and *Stapylton* v. *Scott*, 13 *Vesey*, 426.) that he would not follow those decisions, nor decree specific performance, even under the allowance of compensation.

In the present case, there is no pretence that the substantial inducement to the purchase has failed by reason of the projection of the house. There is no analogy whatever between this case and that stated by Lord *Eldon*, of a contract for a house *and wharf*. The object of the purchase being to carry on business at the wharf, and though the title to the wharf had failed, the Court compelled the purchaser to take the house. Here are the lots, and a good title, and the lease as disclosed; and all the disappointment is, that the purchaser may be obliged to compel his tenant to remove his house a few inches, or to make his own intended building or alley a few inches narrower than his original plan. The main inducement to the purchase cannot be said to be defeated by that circumstance. Nor is there any thing in the case to prevent the conclusion, that the purchaser can, by ejectment, recover possession of the land so encroached upon by the buildings.

But, while the case most clearly requires, that the contract of sale should be fulfilled, yet, the fact of the encroachment of the buildings on lot 43, was not such a patent, and obviously visible circumstance, as to conclude the purchaser from compensation, if the case should otherwise entitle him to it. The strongest ground for compensation is, that the vendor himself, in his notice, declared, that the two dwelling houses were on lot 42. Now, it turns out, that they are partly on lot 43; and if a person, as Lord *Thurlow* observed, (1 *Vesey*, jr. 210.) however unconver-

sant in the actual situation of his estate, will give a description, he must be bound by it, whether conusant or not. I shall, therefore, declare, that the purchaser is held to perform his contract; and shall direct an inquiry by a master, as to the amount of compensation, if any, which ought to be made. It appears, from one of the cases already referred to, and from that of *Horniblow* v. *Shirley*, (13 *Vesey*, 81.) that such is the course of the Court in cases where compensation is to be made for encumbrances, or defects in the subject.

The following order was entered: " It is declared, that the sale and purchase, in the documents and proofs stated and shown, were fair, and that the quantity of land existed, and the title, as declared, existed, and that the description given of the premises was substantially true; and that the fact that the buildings, stated to be on lot 42, being part and parcel of the premises which were sold entire, and for one entire price, do project, in a small degree, on lot 43, being another part and parcel of the said premises, is not sufficient, nor are any of the circumstances stated in the case sufficient to set aside the sale, or to exempt the purchaser from being holden to the performance of the contract of sale. But as the circumstance of that projection may diminish the value of the purchase below what would be its value if such projection did not exist, and may entitle the purchaser to compensation by a deduction from the price he gave : It is, thereupon, *ordered*, that it be referred to a master, to ascertain and report what, in his opinion, under all the circumstances of the case, is the diminution in value (if any) of the premises, as one entire parcel, by means of the projection, below what it would be if no such projection existed, and assuming the value thereof, if the projection did not exist, at 1400 dollars; and the question of costs is reserved," &c.