Judge Mills
delivered the Opinion of the Court.
On the 26th of February, 1822, John Kelly agreed to purchase of John Sibert, a tract of land, on which Sibert resided, and they entered into articles of agreement to the following effect:
u Articles of agreement, made this 25th day of February, 1822, between John Sibert and John Kelly, both of Washington county, Kentucky, viz: The said Sibert hath sold unto the Above named Kelly, the tract of land he now lives on, containing about two hundred ácfés, at eight dollars per acre, for which Kelly is to pay nine hundred dollars, against the eleventh day of March next, in Commonwealth or Kentucky paper, and the balance to be paid within three years after this date, to bear interest from the first year until paid, the deed to be made when the first, payment is made, a general warranty.
Signed, John Sibert,

John Kelly."

Sibert’s bond for the conveyance, of 18th March.
Kelly’s bill for specific performance of the contract, rents, &c.
Sibert’s answer.
It seems to be admitted by the parties that the first payment was one thousand dollars, but one hundred dollars having been previously advanced by Kelly, it was omitted in the foregoing instrument.
On the 18th of March, 1822, Sibert executed to Kelly a bond, binding himself to convey the land on the first day of the ensuing May, calling the tract two hundred acres, to be laid off as had been agreed upon by the parties.
On the 18th. of June, 1822, Kelly filed his hill against Sibert for a specific performance of this contract, and a conveyance of the land. In his bill, he alleges that the whole price was payable in paper of the bank of the Commonwealth, and that he hacl paid $896 of the first payment, and also had paid fifty barrels of corn, which amounted to $03 12 1-2, and also $6 50 in sundry little articles. He complains that the plaintiff had not given him possession or conveyed the land, but refused to do so, and kept it still; that he had been permitted to sow a quantity of oats on the farm, in the spring of 1822, but the defendant, Sibert, would not sutler him to reap them; that in the contract, he was to have one half the wheat and rye sowed on the ground, at the date of the contract, but the defendant had refused to grant it to him; that the defendant had sold part of the tract to others, and laid it off contrary to the contract, and would in no case comply with his bargain. He also complains that there are two mortgages on the land, one to Litsey and the other to the bank of Kentucky, and that there was no way to discharge them, as Sibert was unable, unless he was allowed to pay them. He prays for the rents of the land as well as a conveyance.
Sibert answered the bill, admitting the payment of $896, on the first payment, and denying an3’ further payment; denies that the corn was paid on the first payment, but was to be credited on the last; he contests the $6 50, in small articles, and contends that the reason he did not convey, was, because the complainant had failed in his payment, and insists he was always ready to convey or deliver posses- *671 si on when the first payment should be made. He admits there was some talk about letting the complainant have half the wheat and rye, which was not inserted in the articles or writings; that these crops turned out of little value, and he had sent to the complainant to come and take his share, but he had refused; denies that he took the oats or prevented the complainant from cutting them, but alleges .that they stood in the field till his own oats, within the same enclosure, were taken off, and then were suffered to fall; that he invited the complainant to send his horses or cattle and avail himself of the pasture but he had refused to do so. He denies that he has laid off the land which was excepted in the bond of conveyance which he gave, so as to injure the balance, but reserved for his former sale the worst land. He denies selling the land to others, or any part of it. He alleges that the complainant well knew of the mortgages when he purchased; that he had settled that to the bank of Kentucky and was willing to discharge Litsey’s, if the complainant would pay him and thus enable him to do so. He denies positively that any part of the payment was to be made in paper of the bank of the Commonwealth, except the first, and to settle this, relies on the writing. He asserts his willingness to carry the contract into effect.
Kelly’s admission on ®lbert’s in_
Decree of the circuit court
The complainant admits, in an answer to interrogatories, that he knew of the mortgages before he made the purchase, and insists that the whole1 purchase money was to be in bank paper, and for this purpose relies on the writing.
The court below determined that the amount paid of the first payment, was ‡959 12 1-2, at the date it became due; decided that the whole purchase money was to be bank paper, and that enough of the paper should be reduced to specie to meet the mortgage to Litsey, and that the complainant should discharge that mortgage and have credit for •It; that the defendant Kelly should convey the land and also account for the full rents settled by a commissioner, at $1 50 in paper ■ of the bank of the Commonwealth per acre, amounting to three hup- *672 dree! dollars, and that Kelly should be allowed to set off those rents against any balance for the price of the land, when sued for the same, and Sibert should pay the costs of the suit. Litsey came into court and brought in his demand which Kelly paid, amounting to $259, and the court never settled the rate of exchange by which Kelly should have cred>* it for this payment.
Suit having been groundless and vexatious on the part of Kelly, he was entitled to no relief but what Sibert offered, and for that he must pay all the costs in both courts.
After examination of the proof, we have seldom met with a case, in which a party was more determined upon a suit without just ground, than the present complainant. He seems to have gotten into a passion with the defendant before his suit was brought, and after that, to have behaved captiously and trifled with his own contract. Every failure in the contract was on his part. The parties surveyed the land before the controversy began, and then he refused taking any part unless Sibert would give him about half an acre included casually in the field of a neighbor. After he had sowed his oats he would neither reap them, nor let others do so, nor turn in his cattle to eat them. Pie was offered possession and a completion of the contract, if he would settle and pay the balance of the first payment, and he declined doing so, but would refer the defendant to his lawyer, to settle the matter. On one occasion he tendered about $105, the balance of the first payment, long after it became due. The defendant insisted that the paper had depreciated in value after it became due and required the difference, which he refused to give and kept what he had tendered. In short, his conduct has been such as to entitle him to but few favors from the hands of the chancellor, and if the contract was resisted, we should be disposed to dismiss his bill, but as the defendant insists on the contract, the complainant must have specific, performance thereof; but we have no hesitation in saying that he ought to pay the cost of the whole proceeding in the court below as well as this court.
His charge about the defendant’s selling the whole or parts to others, turns out to be incorrect. There was fifty acres previously sold by the defendant, and excepted in the conveyance bond; this was not laid *673 off on ibe best land, as the bill alleges, but oh the worst, reserving the best for this contract, and the quantity left for him was 205 acres, which at the stipulated price amounts to $1640. $1000 of this was to be paid on the 11th March, 1822, and $640 to be paid on the 25th February, 1825, with legal interest thereon from the 25th of February, 1823.
Accounts must be made up in United* States currency, and' not bank paper, where-ever the case is not within the statute for the specific recovery of bank paper.
Where the purchaser comes for specific performance, he must pay the whole pur-' chase money.
Matters of payments and credits settled.
The objections to the details of the decree of the court below are numerous, and troublesome to detail.
Besides the imposition of cost on the defendant, already noticed, there is a strangé blending of bank paper and spécie in the decree, and one is set oif against the other, without fixing the rate of exchange, and the rents are decreed to the complainant in Commonwealth’s bank paper. We are aware of no rule which authorizes the chancellor to render decrees in bank paper on contracts of that date, or to take and close an account of rents in that article. All sums ought to have been brought to the currency of the United States, and the decree rendered accordingly.
The court indubitably erred in settling part of the contract, and leaving the defendant to his remedy at law, to recover his purchase money if he could, where the whole contract was before the court, and all the money due. The interests of the defendant ought to have been guarded by giving him his demands also, instead of leaving him to le? gal remedies, while his adversary obtained a decree for rents and costs of suit.
That court also erred in giving the complainant credit on so great a sum, on the first payment. We cannot find that the complainant is entitled to a credit greater than $896, in bank paper, on the first payment, and $63 12 1-2, on the second, for the corn. The corn was not direct payment, and must have been taken in accord and satisfaction of so much. It is denied by the answer, that this accord applied to the first payment, but the last, and with this agrees the proof of the complainant, who shews that he tendered about $105 on the first payment. *674 There is then still due of the first payment $104 in bank paper, which must be scaled to its value, oil the eleventh of March, 1822, and bear interest till it is discharged.
Held, on the words of the agreement, the pri'-e of the land, except the first payment, was specie.
Matters of credit and interest.
Rents allowed the purchaser, in decreeing to him a specific execution of the contract.
But the main question is, what ought the remaining payment to be made in, bank paper or specie? This must be settled by the words of the writing first recited. Both refer to and rely on it, and it is not pretended that there was any fraud and mistake in writing it. We are of opinion that the price of the land was to have been paid in specie, except the first payment of one thousand dollars. The instrument declares the purchase to be “at eight dollars per acre.” If the instrument had stopped here, there could have been no doubt that specie was intended, and to make the intention more clear, they proceed to state that the first payment was to be “in Commonwealth’s or Kentucky paper,” which negatives the idea that the rest was to be sb paid. Had these words been inserted after the words “eight dollars per acre,” then the sense contended for by the complainant would have been clear; but placed where they are, the sense is clearly turned against .him.
After, therefore, giving credit for the cdrft, there will be due to the defendant, bn this payment, the sum of $576 87 1-2, in specie, bearing legal interest according to the contract, from the 25th of February, 1823, till paid. Against these sums with their interest, the complainant will be entitled to a credit, for the sum paid in discharge of Litsey’s mortgage, at the date of its payment.
As to the rents, we conceive that the defendant must pay them, as he received the greater part of the first payment, and is to have interest on the balance. There is no proof, and nothing said in the writings about possession, except what is gathered from bill and answer. This must be settled by the admissions of the parties as well as the first writing, as commencing on the 11th day of March 1822, and continuing at a reasonable rate in specie, during the possession of the defendant — aud at the close of the account be credited against the money due, and in *675 terest, and the balance be decreed against whomsoever it may be found. But in making this assignment the rent of the ground sowed in oats for the first year, by the complainant, ought to be excluded, ' because it was the complainants own fault, that he did not reap the fruits of his labor on that ground for that year. The claim for wheat and rye, as that crop is not shewn to be of any value, will be compensated by the rent of the land in which the crop was sowed the first year.
Commissioner to be appointed, inter alia, to ascertain the value of the bank paper.
Where the alienee of land, having failed to have his deed recorded,brings his bill for a conveyance to be registered, here, against the alienor’s dev-isees, he must pay Mr own costs of the suit.
In settling this controversy in this mode, it may be easily seen that an assessment and an account will become necessary, which the court below ought to have made in the usual mode, by a commissioner or commissioners, appointed for that purpose, especially as the rate of exchange must be settled on the balance of the first payment; and although the proof shews the depreciation to be considerable, yet it no where fixes it precisely. It is, therefore, a fact which may be ascertained by commissioners duly empowered, by order of the court, to take testimony on the' point.
Another question touching other parties in the case, as the decree must be reversed, deserves notice.
The land was patented in the name of Matthew Walton, who conveyed to the defendant, who neglected to have his conveyance recorded. Walton departed this life, having previously made his last will, in which his widow was made"his devisee of all his estate except specific legacies. She has since intermarried with John Pope, Esq. The complainant, in an amended bill, charges these facts, (with which facts he was acquainted before his purchase,) and makes Pope and wife defendants, who made default, and he craves of them a conveyance also. The court decreed that they should unite with the defendant, Sibert, in making a deed of general warranty for the land, without regard to the assets which have come to their hands, or the devise to the wife. This was illegal and improper. The complainant has already the warranty of Walton, on which he must rely, and the most that he can *676 claim of Pope and wife, is a bare release or conveyance, without responsibility, in confirmation of Walton’s conveyanance, and that at the cost of the complainant.
Mandate.
Triplett, for appellant; Rudd, for appellee.
The decree must be reversed, with costs, and the cause be remanded, that such proceedings may be had, and decree rendered, as shall conform to this opinion and the rules of equity.