### BROOKS vs. ISBELL.

Where a vendor of land executes and delivers to his vendee a deed of conveyance, and afterwards receives back the deed for a specific purpose:—for instance, to obtain the relinquishment of dower by his wife—the delivery is sufficient and the title to the land vests in the purchaser.

A party having sold a body of land, composed of several sectional subdivisions, some of which had been previously purchased at the land office by the vendee, and a part

of the purchase money being unpaid, the court, in making a decree, will deduct from the unpaid purchase money the amount that would have been required to enter the land had it been vacant.

Where a party has entered into a valid and binding contract, no admissions subsequently made by him expressing a doubt as to the validity of the contract or a belief that he had no title under it, would amount to a surrrender of, or in any way affect his legal rights under the contract.

*Appeal from Lawrence Circuit Court in Chancery.*

Hon. WM. R. CAIN Special Judge.

BEVENS for the appellant.

The application of Brooks to a court of equity is not to enforce the specific execution of a verbal contract for the sale of land, but to obtain a conveyance for land, to which a conveyance had been made to him, and which conveyance, by the fraudulent act of Isbell, had been destroyed. *Hunter vs. Semral et al.* 5 *Litt.* 63; *Kent's Com.* (6 *Ed.*) 456; *Souverbye vs. Arden* 1 *J. C. R.* 240; 15 *Wend.* 545 ; 6 *Conn.* 111 ; *Ch. on Con.* (8 *Amer. Ed.*) 4.

Upon the re-delivery of the deed to Isbell to obtain a relinquishment of his wife's dower, he was a trustee for Brooks for that purpose, and the payment of the purchase money could not have been resisted. *Burnham vs. Oldham* 7 *Mon. R.* 652.

FOWLER & STILLWELL, also for appellant, contended that the sale was perfected by the delivery of the deed (6 *Pet.* 136; 5 *Ark.* 695;) that the estate passed out of the grantor and vested in the grantee without proof, acknowledgment or record of the deed (3 *Yerg.* 176; *J. J. Marsh.* 222; *Wheat.* 466;) that the title does not revert to the grantor by the surrender and destruction of the deed. 14 *Pet.* 327; 4 *Conn.* 262 ; 1 *Freem. Ch. R.* 239; 4 *N. Hamp.* 194.

FAIRCHILD, for the appellee, argued this cause at length upon the following points :

1. That to sustain a bill it must charge an agreement correspondent with and supported by the testimony—citing *Willard's Eq. Jur.* 283; 2 *Story's Eq.*, sec. 764; 5 *Wend.* 646; 5 *Pet.* 276; 15 *Ark.* 325; 1 *J. C. R.* 286; and that whatever agreement the testimony in this case may prove, it cannot be said that it proves the agreement as charged.

2. That the agreement must be one that Isbell can perform, and that it would be equitable to require him to perform: But that it was impossible for him to convey several of the tracts of land that are claimed by the bill, or that were the subject of agreement between him and Brooks, on account of their previous and contemporaneous entry by Brooks. And that from this fact, and from Brooks' conduct by his agent, as proven and admitted; and from the general, indefinite and unsatisfactory nature of Brooks' testimony, and from his not having offered to do. and having opposed the doing of equity towards Isbell, before the suit and during its progress; and, from the want of mutuality of right between them, the court below equitably used its discretion in refusing to decree a specific performance against Isbell. 2 *Story's Eq.*, secs. 769, 767, 764; *Will. Eq. Jur.*, 267, 268, 291; 1 *Sug. Vend.*, pp. 243, 250; 16 *Ark.* 363; 19 *Ib.* 35 6 *J. C. R.* 224; 5 *Ib.* 195; 17 *How.* 343.

3. That the agreement made by Isbell, is void by the statute of frauds—no minute or memorandum thereof in writing, was ever signed by Isbell, and the deed that is alleged in the bill to have been executed in Jacksonport, he never did sign, till he signed it in Lawrence county, and after signing he never delivered it    A deed to be executed, must not only be signed, it must be delivered by the grantor, must be accepted by the grantee.

Hon. HARRIS FLANAGIN, Special Judge, delivered the opinion of the court:

This was a bill in chancery, brought by Brooks against Isbell for several tracts of land.

The bill alleges that Isbell sold to Brooks several tracts of

land, for which Brooks was to pay two thousand dollars in swamp land scrip, and that a deed was made, executed and delivered by Isbell, when, upon reflection, the deed was returned to Isbell upon his promise to get his wife's signature, have the deed acknowledged, and return it in the course of a week. The deed was made June 24th, A. D. 1853. The complainant paid three hundred and seventy dollars; has offered to pay the residue, but could not get the deed.

The defendant admits the negotiation and sale, and that a deed was made, executed and acknowledged by himself and wife, but denies that it was delivered; avers that a part of the contract was that Brooks was not to enter any more lands in his neighborhood for settlers, and that the inducement to the trade was future profits, which he expected to make upon the entering of swamp lands. That complainant made all the entries he desired, and prevented him from using the scrip profitably, when defendant determined not to complete the sale. He denies that Brooks ever paid anything on the land.

The testimony on this point is, *first:* The deposition of Silvey, which is, that Brooks and Isbell were in his office as swamp land agent of Arkansas, at Jacksonport, which was also the law office of William S. Keith, and a conversation in regard to a sale from Isbell to Brooks of certain lands, in which it was stated they were sold for swamp land scrip, the amount of which he cannot say, but about the sum of two thousand dollars. Brooks had six or seven thousand dollars in swamp land scrip deposited in the office, and witness paid Isbell on the trade for Brooks three hundred and seventy dollars. He thinks Keith drew up a deed, it was in Keith's hand-writing, for the land—Keith read the deed. He thinks Mr. Isbell signed the deed in his office, and, at the time spoken of, " Mr. Isbell handed the deed, after he signed it, to Mr. Brooks or Keith; Keith at the time was acting as attorney for Mr. Brooks. I stated to Mr. Brooks privately that the deed was imperfect for the want of the relinquishment of the wife's dower." Isbell, afterwards, in talking about it, offered to take the deed home and get his

wife's signature and return it. Thinks Brooks handed the deed to Keith, who wrote out a relinquishment of dower and gave it to Isbell, who promised to bring it back in a few days. Brooks directed witness to pay the balance of the scrip on the return of the deed. Isbell entered a part of the land mentioned, about the time of the sale. Isbell afterwards sent an order for sixty dollars in scrip, which witness refused, because the deed had not been returned.

William S. Keith deposed, that the parties to the suit came into his office and told him to draw a deed for lands that Isbell had sold to Brooks. He drew a deed in fee simple, and handed it to Isbell, who signed and handed it to Brooks, and then he wrote an agreement for them. Brooks told Isbell he would furnish some scrip to enter land (witness thinks part of the land sold), and Silvey, as Brooks' agent, let him have it. He let him have three hundred and seventy dollars. Witness attended to Brooks' land transactions, and knew more about them than Brooks did himself. After this was through, Brooks asked him if it would not be necessary to have Isbell's wife's relinquishment of dower; Brooks handed the deed to Isbell, which he said he would carry home and have his wife's dower released, and bring it back in a few days; witness wrote out a relinquishment of dower to be executed. Brooks told Silvey, when the deed was brought back, to pay him the balance. Brooks told Isbell that he would not enter any more lands for the people living in his, Isbell's, vicinity after Mr. Joney, his agent, had carried out what contracts he had made to enter lands in that neighborhood. He thinks Brooks wrote to Joney to that effect, and sent the letter by Isbell.

On the part of the defence it is proven:

William H. Swan heard Brooks say, in the presence of Isbell, that he had purchased Isbell's place in Lawrence county, and that Isbell had the deed, and he was to take it home on the same day and sign and acknowledge it.

Thomas J. Isbell deposes, that defendant brought home from Jacksonport a blank deed from himself to Brooks. Isbell and

his wife both signed it, and called upon him to witness the same, which he did.

It appears that a certain paper about a mill, which is also a subject of litigation, was executed on the same day, the twenty-fourth day of June, A. D. 1853; that a portion of the lands included in the deed was entered also on the same day, and this furnishes supporting and corroborating testimony to that of Keith. Keith swears positively to the signing and delivery; Silvey, it is true, says he thinks it was signed, but he adds positively that it was delivered, and Isbell afterwards received it back, and he privately suggested the defect. It is impossible to think that the deed was not signed and delivered at Jacksonport without thinking these witnesses have not sworn the truth; on the other hand, one can well imagine the witnesses swore the truth, and Isbell might have been mistaken in the fact about the signing by Isbell. The testimony, upon our minds, leaves the conclusion that the deed was signed and delivered at Jacksonport, and afterwards taken by Isbell for a special purpose, and, as a consequence, that the title to the lands vested in Brooks.

It is urged that the evidence is such that it cannot be ascertained what was conveyed by the deed.

The bill alleges that the land conveyed was: S. E. ¼ 31, N. E. ¼ 29, E. ½ S. E. ¼ 29, S. W. ¼ S. E. 29, E. ½ S. E. ¼ 31, S. W. ¼ 28, W. ½ N. ½ 32, S. E. ¼ N. W. ¼ 32, S. W. ¼ 32, E. ½ N. E. ¼ 32, N. W. ¼ 33, Township 17 N., R. 1 E.

The answer, as aided by the appellee's brief, admits the lands sold to be, S. E. ¼ N. E. ¼ 29, E. ½ S. E. ¼ 29, S. W. ¼ S. E. ¼ 29, S. W. 28, N. W. 33, N. E. 32, S. E. N. W. 32, S. W. ¼ 32, 17, 1; denying that the negotiation extended to the south-east quarter of section twenty-one, to one hundred and twenty acres in the north-east quarter of section twenty-nine, the east half of the south-east quarter of section thirty-one, and one hundred and twenty acres in the north-west quarter of section thirty-two.

It was admitted that the north east quarter of section thirty-two was included in the trade, but it is not so charged in either

the original or amended bill as to the west half of the north-east quarter of section thirty-two.

Silvey testifies that the parties were seated around a table, and Isbell presented a diagram, and said that was the way the land lay. The diagram is made an exhibit; thinks it the same one showed by Isbell. Isbell marked the boundaries by dots. The witness gives the numbers as he writes them down from the diagram, and they correspond with the answer, except that they include the west half of the south east quarter of section thirty-two, and also included the north-west quarter of 23, but omitted the north-west quarter of 33, the numbers being given in figures. He says that he understood the dotted lines to include the lands sold.

Keith testifies to certain numbers as included in the deed, which correspond with the answer, except that the north-east quarter of section thirty-two is omitted, and the east half of the south-east quarter of section thirty-two is put in the deposition twice. He states that the diagram attached to Silvey's deposition " was made out by Isbell and shown to witness, from which he drew the deed above referred to, and by reference to which he now thinks the numbers correctly stated." Mr. Isbell stated that the lands enclosed by dots were the lands sold to Brooks.

Thomas J. Isbell testifies that the numbers included in the deed were the same as those mentioned in the answer, except he testifies that the west half of the south-east quarter of section thirty-two was included in the deed.

The plat corresponds with the answer, except that owing to some indefiniteness, it may possibly include the west half of the south-east quarter of section thirty-two.

As Silvey and Keith evidently intend to copy the numbers from the diagram, and as the bill does not allege, nor the answer admit, the west half of the south-east quarter of section thirty-two was included in the deed, and it not appearing positively that this tract is included in the plat, the numbers inclu-

ded in the answer will be taken to be the numbers sold by Isbell to Brooks.

The north-west quarter of section thirty-three is alleged in the bill, admitted in the answer and proved by the witnesses to be one of the tracts conveyed, and it appears also that these lands had before been entered by the complainant and one Brinkley. Of course the court will not compel a conveyance of this tract, but will deduct from the purchase money the amount that would have been necessary to have entered this land at the swamp land office had it been vacant.

The east half of the north-east quarter of section thirty, appears by the certificate of the auditor, Huey, to have been entered by Brooks before the alleged sale by Isbell. This fact is also established by the evidence of Board, a witness. This must be excluded from the decree, and the amount which it would take to enter it in the swamp land office, taken from the consideration.

It is urged that the appellant has not a right to the interference of equity, because he did not do equity.

It clearly appears that a part of the consideration was paid; that Isbell expected to get the balance from Silvey, as he drew an order on him for scrip afterwards. It further appears that a demand was made for the deed, and refused on the ground of a breach of contract and not for want of payment, or readiness to pay. The contract alleged to have been violated was that Brooks should enter no more land in the neighborhood for others. This contract is alleged in the answer and proved with essential modifications by Keith, but there is no certain competent proof that either the contract alleged, or the one proved was ever violated. Isbell, it is true, makes some statements about entries made and numbers sent to the land office. Whether these lands were ever entered, the witness does not appear to have any means of knowledge, or if he does, he does not state it. He does not state that these lands were in Isbell's neighborhood. If there was a valid and binding contract, and it had been violated, then a court of law could have enforced

it. It is no ground for refusing to deliver a deed which he had already executed and delivered, and which he had received back for a specific purpose.

It is insisted that this contract was abandoned by Brooks. The deed was returned to Isbell for a specific purpose, and did not amount to an abandonment of the contract. See authorities cited in *Strawn vs. Norris et al.* 21 *Ark.* 82. Brooks wrote to Isbell, November 3d, 1853, "Mr. Isbell, I will be at Mr. Bate's to-morrow, and would like to see you, I am ready to move my hands, and would like to have the lands I contracted for last June."

Beal deposes, in the autumn of 1853, he heard Brooks say to Isbell that he would trade one thousand dollars worth of goods for his place, which Isbell refused.

Kely Isbell testifies, about the 4th of November, 1853, Brooks asked Isbell if he still considered it a contract, and Isbell said he did not, as Brooks had not complied with his contract. Brooks seemed to blame his agent, was sorry he had forfeited. his contract—hoped that Isbell was not disappointed, and thought Isbell would get more for it, and proceeded to suggest a second trade for the land. Brooks said he had not paid anything to Isbell.

The whole of this testimony cannot prove more than he thought he could not hold the land. He does not do any act to relinquish. He does not voluntarily surrender any claim, but he seems in the conversation to think he had not the title.

The Supreme Court of Massachusetts held, in the *Boston Hat Manufactory vs. Messinger*, 2 *Pickering*, that the admissions of the legal effect of a contract cannot bind the party. In *Moore vs. Hitchcock*, 4 *Wendel*, 292, it was held that an admission of a party under a misapprehension of his legal rights does not affect his interest. In the case of *Lefevre vs. Robinson*, *Littell's Select Cases*, 22, the case was much stronger for the defendant than for the appellee in this case, and the court hold " that admissions of an adversary's right, when that right depends as much on matters of law as of fact, will not

prejudice the party making them." An admission of title and declarations of acquiescence made under a mistake of law, do not bind the party making them. *Hardin Rep.* 282.

An admission made and not acted upon is not conclusive against the party making it. 1 *Greenleaf Ev.* 209.

Whatever the proof may show the admissions to be, we hold that he is not bound by them so as to prevent a recovery.

It was alleged in the bill, that a part of the agreement was the construction of certain improvements upon the lands sold, and the answer admits the agreement, which is as follows:

THE STATE OF ARKANSAS,    }
    County of Lawrence.    }

   Whereas, I, Josiah H. Isbell, having this day sold to W. P. Brooks, my plantation, where I now reside, also the farm known as the Bently farm, in said county, situate on the southwest quarter of section thirty-two in town 17 north, of range 1 east, I, by these presents bind myself, by the first day of February, A. D. 1854, to build and put on the last mentioned place, or premises, a good gin-house, pick-room and press, with a good set of running gear, a good gin stand and horse mill, all in good complete style and ready for running, to be completed in a good workmanlike manner, and of good materials.

In testimony whereof, I have hereunto set my hand and seal this 24th June, A. D. 1853.

J. H. ISBELL, (Seal.)

As matter of defence, the answer sets up that the timbers were got out at the time of the contract on vacant land, and that Brooks entered the land and would not let him have the timbers.

It is proven that one Joney forbid the removing of the timber by public notice, and witness says he was Brook's agent, and that Brooks entered the land, and then goes on to say that Brooks said he did not believe the land entered, but if it was entered to take the timbers and use them.

The testimony does not show that Isbell was prevented from

building by acts of Brooks; but on the contrary, it appears that he intended to violate his contract soon after it was made.

It was proved that the improvements which were to be made were of the value of six hundred and fifty dollars.

The decree will be reversed, and a decree entered for appellant for the following lands:

S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ section 29; S. W. $\frac{1}{4}$ section 28; E$\frac{1}{2}$ of the S. E. $\frac{1}{4}$ section 29; S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ section 29; S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, section 32, S. W. $\frac{1}{4}$ section 32, Township 17 North, Range 1 East; and if the complainant elects he will be permitted to file a supplemental bill for the west half of the northeast quarter of section thirty-two, but to be confined to that purpose alone, and upon the papers to decree a title for that tract also.

The chancellor will deduct from the price (two thousand dollars) six hundred and fifty dollars, the value of the improvements, three hundred and seventy dollars, the amount paid on the trade, the amount necessary to enter at the swamp land office the north-west quarter of section thirty-three, and the east half of the north-east quarter of section thirty-two, (which will be taken for the purpose of this calculation, to contain two hundred and forty acres) and upon the balance to calculate interest at the rate of six per cent. until the decree shall be rendered, which will be taken as the sum due from Brooks to Isbell.

Brooks must be required to bring the money into court at the rendition of the decree.

Hon. H. F. FAIRCHILD did not sit in this case.