Hunt v. Rowland.

## Hunt v. Rowland *et al.*

1. Vendor and vendee: LIABILITY FOR TAXES. A vendee of real estate, who takes possession and enjoys the rents and profits of the land, is liable, as between the vendor and himself, for the payment of the accruing taxes, although the title-bond does not in terms indicate who is to pay them. Following *Miller* v. *Corey*, 15 Iowa, 166. •

22    53
f126  183

2. —— TAX SALE. And being thus liable, the vendee cannot acquire a title against his vendor by suffering the land to go to tax sale and bidding it in thereat.

3. —— GENERAL RULE. Nor, as a general rule, can a vendee acquire a title adverse to his vendor by a purchase at a tax sale.

4. —— THIRD PARTIES. And this rule applies to a third person who bids in the land in his own name at the dictation of the vendee, with means realized from produce sold from the land.

*Appeal from Muscatine District Court.*

WEDNESDAY, APRIL 10.

ROWLAND brought his law action against Hoag, the tenant of Hunt, claiming the title to, and to recover possession of, certain real estate. Hunt, as landlord, was made defendant, and filed his bill in equity, setting up his title, and alleging that Rowland's title was obtained by fraud, or under such circumstances as made him a trustee, holding for his, Hunt's, benefit, etc. The case was first heard upon the equitable issue, and this being decided against the plaintiff, the law action was tried with the same result, and plaintiff appeals.

*D. C. Cloud* for the appellant.

*Thos. Hanna* for the appellee.

WRIGHT, J.—The undisputed facts of this case are briefly these: Prior to October, 1856, Hunt was the **1. VENDOR AND VENDEE: liability for taxes.** owner of these lands (160 acres), and, on the 31st day of that month, sold the same to Pliny Hopkinson, giving him a bond for a deed, to be made upon the payment of the purchase-money, some nineteen hundred dollars. The purchaser went into possession, making his home on the premises, with his father and step-mother, William and Ruthanna Hopkinson. In March, 1858, he transferred this bond to his step-mother, and the possession continued as before,

and until the winter of 1861. In September of that year, Ruthanna Hopkinson, at the request of plaintiff, assigned the bond to one Armstrong, for plaintiff's use; the contract was abandoned, and Hunt, in this settlement, because of some payments, improvements, etc., conveyed to said Ruthanna, twenty acres of the land. In October, 1860, the entire land was sold for the taxes of 1857, '58 '59, and bought in by Rowland, who is the son-in-law of William and Ruthanna Hopkinson; and it is under this title that he claims the same. He obtained his deed October 6th, 1863, and commenced his law action the next month. Plaintiff claims that the Hopkinsons (father, mother and son) were bound to pay these taxes; that when they settled they represented they had paid the same; that Rowland lived in the family; that they combined and confederated together to cheat and defraud him by letting the land go to sale; that, while it was bid in by Rowland, the money was furnished by the Hopkinsons; and that, by reason of their liability and relation to the land, they could not thus divest him of his title. Upon the issue thus made this whole controversy hinges. To it, therefore, we direct our attention.

The bond under which the Hopkinsons held did not, in terms, indicate who was to pay the taxes to become 2. —— tax sale. due on the land. As the vendee took possession, however, and enjoyed the rents and profits, the rule settled in *Miller* v. *Corey* (15 Iowa, 166), would, as between him and his vendor, make him liable. Being thus liable, being bound upon legal and equitable principles, though not by expresss covenant, to keep down the incumbrances, he could not acquire a title against the vendor, by suffering the land to go to sale, and bidding it in for the taxes.

Not only so, but as vendee, he could not acquire a 3. —— general rule. title adverse to his vendor, by a purchase

at tax sale. These rules are well settled, as will be seen by the following, among other cases : *Voris* v. *Thomas*, 12 Ill., 442 ; *Glancy* v. *Elliott*, 14 Id., 456 ; *Willard* v. *Strong*, 14 Vermont, 532 ; *Blake* v. *Howe*, 1 Aiken, 306 ; *Douglass* v. *Dangerfield*, 10 Ohio, 152 ; *Ballance* v. *Forsyth*, 13 How., 18 ; Blackwell on Tax Titles, 470–2.

The land, however, in this case, was bought, not in the name of the vendee, nor by one under any covenant to keep down the incumbrances. And yet the testimony satisfies us that. he combined with the vendee, or those in possession, to thus acquire the title and defeat that of the vendor; or, if not to defeat his title, to get it into his hands for the benefit of the family, rather than to let it be bought in by some stranger. He was living on and working the land (as subtenant, perhaps), at the time. The proof comes from Rowland and those apparently interested in defeating plaintiff's title. It is not very conclusive, we admit, and yet, taking it all together, it sufficiently appears that it was understood that he was to bid in the land; that he used for that purpose means realized from the produce, belonging to Hopkinson, sold from the place ; that he acted at the instance and upon the dictation of the party holding the bond, and that, in his conversations with plaintiff, he treated the purchase more as a possible lien than as the basis of an independent title. In view of his relation to the parties and the circumstances of the purchase, we could not, consistent with principle, allow. the title to prevail. It is certain that plaintiff settled with Mrs. Hopkinson after the purchase, entered into possession, and procured the rescission of the contract, with the belief that she had no further claim upon the land. It is worth very largely more than the tax incumbrance, and it would be paying a premium for fraud to allow plaintiff's title to be thus divested.

The decree below and the judgment following in the law action will, therefore, be reversed. The case, owing to some confusion in the testimony as to the amount of taxes paid, and the exact terms of the settlement, is not in condition for a final decree. It will, therefore, be remanded for disposition in accordance with the above views. If, on the final hearing, Rowland is in a condition to entitle him to the repayment of the money paid at the sale and for subsequent taxes, this will be allowed him, and be recognized as a lien upon the land.

If, on the other hand, he was acting as the agent of and for the vendee or the holder of the title bond, and such holder, within the rule above stated, was bound to pay the taxes or any part of them, to that extent plaintiff should not be held liable.

Reversed.