M. A. CLINTON, Appellant, v. T. J. SHUGART & C. G. OUREN, Appellees.

T. J. SHUGART & C. G. OUREN, Appellees, v. M. A. CLINTON, Appellant.

**Executory contract for sale of land:** LIABILITY FOR ACCRUING TAXES.
1   As between the parties to an executory contract for the sale of land, where the vendor retains the possession, rents and profits until the conveyance is due, he is liable for the payment of accruing taxes in the absence of an agreement by which the purchaser assumes that obligation: and this rule is not affected by Code, section 1400.

**Sale of real property:** EXECUTORY CONTRACT: CONSTRUCTION. The
2   provisions of an executory contract for the sale of land are considered, and it is held that there is nothing to indicate an understanding of the parties that the purchaser should pay the taxes falling due prior to a conveyance of the title.

**Specific performance:** TENDER. Where it is the duty of the vendor
3   in an executory contract to convey land to pay the taxes accruing up to the time of the conveyance and he fails so to do, a tender of the purchase price at the maturity of the contract, less the amount of such tax, will support an action for specific performance at the suit of the vendee.

**Actions:** EQUITABLE RELIEF. Where a suit in equity, by a vendee of
4   real property, for specific performance and one at law to rescind the contract are pending at the same time, the court may proceed to determine the material issues in the equity suit regardless of which action was begun first.

*Appeal from Pottawattamie District Court.*— HON. N. W. MACY, Judge.

SATURDAY, DECEMBER 17, 1904.

THE appellant, who is a resident of Minnesota, being the owner of certain property in the city of Council Bluffs, Iowa, leased the same to the appellees under date of August 10, 1899, for a period expiring January 1, 1903, at a rental of $600 per annum. On July 3, 1901, the parties entered into a written agreement for the sale and purchase of the property for the sum of $500 in hand paid, and the further sum of $6,500, payable on or before January 2, 1903, without interest; appellees to continue to pay rent under the lease until the expiration of the term, unless the purchase price should be sooner paid. After making this contract, and before the time for the making of the conveyance had matured, general taxes for city, county, and State purposes were levied upon the property for the years 1901 and 1902, and remained delinquent and unpaid. On the day the contract matured the appellees made tender to the authorized agent of the appellant of the entire unpaid portion of the contract price, less the amount of the tax, and offered to pay the full $6,500 if appellant or her agent would remove the lien. Relying upon the theory that appellant was not bound to pay the taxes accruing after the date of the contract, the agent refused to accept the tender or to discharge the lien. On the same day the appellees filed in the office of the clerk of the district court their petition in equity against the appellant, asking a specific performance of the contract to convey. Thereafter service of the original notice of such action was served by publication. On January 29, 1903, the appellant, acting upon a forfeiture clause in the contract, served notice on the appellees that, unless payment of the agreed purchase price of the property was made within thirty days, the contract would be declared forfeited, and possession demanded. On March 10, 1903, and before publication of the original notice was completed in the action begun

by the appellees, appellant began her action at law in the district court to recover possession of the property. On trial to the court in each case the issues were found with the appellees, and appellant was decreed to make the conveyance as prayed in the action for specific performance. Mrs. Clinton, defendant in the action in equity and plaintiff in the action at law, appeals. As both actions turn upon the same state of facts, they have been jointly submitted in this court, and will be disposed of in one opinion.— *Affirmed.*

*E. E. Aylesworth, J. R. Reed,* and *Francis B. Hart,* for appellant.

*Harl & Tinley,* for appellees.

WEAVER, J.— When the statement of facts is comprehended, it will be apparent that the principal question presented for decision is a narrow one — on which party did the duty rest to pay the taxes accruing upon the property after the making of the contract and before the conveyance was due? That part of the contract upon the construction of which this inquiry principally turns is in the following words; appellant being referred to therein as " party of the first part " and the appellees as " parties of the second part ":

And the said second party, in consideration of the premises, hereby agrees and promises to pay to the said first party, the sum of SIX THOUSAND FIVE HUNDRED ($6,500.00) Dollars, according to the tenor and effect of his promissory notes described as follows: THIS CONTRACT, ON OR BEFORE THE 2ND DAY OF JANUARY, 1903, IT BEING UNDERSTOOD THAT THE PRESENT LEASE SHALL REMAIN IN FORCE UNTIL SAID 2ND DAY OF JANUARY, 1903, at THE OPTION OF PARTIES OF SECOND PART, WHO ARE TO CONTINUE PAYING THE RENT THEREUNDER UNTIL SAME TERMINATES OR PARTIES OF SECOND PART MAY ELECT AT ANY TIME HEREAFTER TO PAY SAID BALANCE OF $6,500.00 TO PARTIES OF FIRST PART, THEREBY TERMINATING SAID LEASE AND BECOMING ENTITLED

~~TO DEED HEREUNDER bearing even date herewith and payable to the order of the said ———— with interest thereon from ———— at the rate of ———— per cent per annum, payable ———— annually. The said second party also agrees regularly and seasonably, to pay all taxes and assessments, that may be hereafter lawfully imposed on said land, before the same shall become delinquent, including the taxes for the year 189——.~~

Now, in case the said second party shall pay the said several sums of money punctually, in accordance with the tenor and effect of the CONTRACT, said promissory notes and shall strictly and literally perform all his agreements and stipulations herein contained in accordance with their true intent and meaning, then the first party, upon the surrender of this contract, will execute unto the said second party a WARRANTY deed, conveying to him the above described real estate in fee simple, with covenants that at the date of this agreement the title of the said first party was perfect in and to the same, and that he will forever WARRANT AND DEFEND the title against the lawful claims of all persons whomsoever, up to the date hereof, and with special covenants against his own acts up to the time of executing said deed, SUBJECT TO THE UNPAID INSTALLMENTS OF PAVING TAX MATURING AFTER THE DATE OF THE DEED HEREIN PROVIDED FOR. But in case the said second party shall fail to make the payments aforesaid, or any of them punctually, and upon the strict terms and the exact time herein limited, or shall fail to perform all and each of the agreements and stipulations herein contained, strictly or literally, without any default or neglect, the time for payment being expressly understood to be of the essence of this contract, then the said first party shall have the right to declare this agreement null and void, and all rights and interests hereby created or then existing in favor of said second party, or in any manner derived under this contract, shall utterly cease and determine, and the said real estate shall revert to and revest in the said first party, without any declaration of forfeiture, act of re-entry or any other act to be by said first party performed, as absolutely, fully and completely as if this agreement had never been made, and without any right of the said second party of reclamations or compensations, for money paid or improvements made.

(This contract was written upon a printed form. In the portion above quoted the erased lines represent like erasures in the original, the unerased printed matter is here copied in ordinary type, while the written portion appears in CAPITAL LETTERS.)

We have examined this agreement with much care in the light of the arguments of counsel and of the precedents cited, and conclude that the obligation to pay the taxes rested upon the appellant. The contract was not one by which the appellees obtained any present right to the use or possession of the property. They were in possession under a lease, and remained in possession until January 1, 1903, in their rights as tenants alone. In other words, the appellant was, in a legal sense, herself in possession by her tenants, and she was receiving the agreed rental therefor. Until the time should arrive for a deed, the appellees, except as tenants, had no more right in or control over the premises than they would have obtained by a similar contract pending the term of a lease held by a stranger. We think it an established rule of law in this State that, as between the parties to an executory contract for the sale of land, where the seller retains the possession, rents, and profits until the conveyance is due, the duty rests upon him to pay the accruing taxes, in the absence of any agreement by which the purchaser assumes that obligation. This principle was expressly recognized in *Miller v. Corey,* 15 Iowa, 166; *Hunt v. Rowland,* 22 Iowa, 55; *Lille v. Case,* 54 Iowa, 182; *Nungesser v. Hart,* 122 Iowa, 647. The last-cited case seems to be directly in point. Hart had sold plaintiff a tract of land by warranty deed, and the latter brought suit for a breach of the warranty because of a tax lien which had accrued after the contract of sale and before the conveyance. It appears that the contract, as in the present case, was purely executory and possession was not to be given until after the deed was made. Reversing the ruling

1. LIABILITY FOR ACCRUING TAXES.

of the lower court sustaining a demurrer to the petition, we held the action could be maintained, and that the seller retaining the use and possession of the property was liable for all taxes accruing before the title passed. It is, we think, the universal rule that the holder of the legal title in the actual occupancy and possession is duly bound to pay the taxes accruing during such possession, and, in the absence of some agreement to the contrary, he cannot shift the burden to the shoulders of another. Warvelle, in his work on Vendors, section 179, says: " Primarily, the duty of paying the same [taxes] rests upon the person who holds the legal title. * * * The obligation is equally binding upon the vendee who has stipulated or agreed to pay the same. A vendee, prior to the conveyance, who has not so agreed, will not be directly responsible for the tax. * * * As between the parties, all payments of taxes by the vendee are presumed to be made on behalf of the vendor." The principle applied in *Nungesser v. Hart,* 122 Iowa, 647, has been approved in *Farber v. Purdy,* 69 Mo. 601, and we find no holding to the contrary in this State or elsewhere.

The enactment of Code, section 1400, fixing the date when a tax lien attaches between the seller and buyer of land, does not affect the authority of *Miller v. Corey* and other cases in which that decision is followed, for one who agrees to sell and convey at a future date, meanwhile remaining in possession of the property, continues to be the owner for the purposes of taxation until the contract is performed and the title passes, and it is this date to which we must look in applying the statute. According as the passing of the title takes place before or after the date named in the statute, will the duty of paying the taxes fall upon vendee or vendor. If, therefore, the contract before us contains no provision by which the appellees expressly or impliedly undertake the burden of the accruing taxes, we must hold it to have been appellant's duty to discharge them.

Counsel insist, however, that the provision in the con-

tract by which the appellant's deed was to warrant the title generally to·the date of the contract, and thereafter only

2. SALE OF REAL specially against her own acts, is a sufficient
PROPERTY:
executory con-indication of the understanding of the parties
tract; con-
struction.     that she was to be relieved from the payment of taxes; but this is a strained and unnatural interpretation of the language referred to.    Appellees, as the holders of the contract of purchase, had an equitable right in the land, which was liable to become incumbered by their acts or omissions, thus creating real or apparent clouds or burdens upon the title; and it is not an unusual thing for vendors, in making an executory contract of sale, to fence against future annoyance and controversy by limiting the effect of their covenants in this manner.    She does undertake to warrant against her own acts down to the making of the conveyance, and if, as we hold, it was her duty to pay the taxes, in the absence of an agreement to the contrary, and by her neglect and failure to perform that duty the title has become incumbered, we see no reason why it may not be said to be, in a very just sense of the word, the result of her own act, for which she would be liable on her covenant.

There are other significant facts in respect to the contract, which go to strengthen the conclusion we have reached. The blank form employed contained a printed clause, which expressly bound the purchasers to pay the taxes from the date of the contract; but these words were erased before its execution, and no equivalent expression is found elsewhere. It is incredible, if there was any agreement or understanding by which this obligation to the public was to be shifted from appellant to appellees, that this clear and express provision should have been carefully erased, and the alleged understanding left to remote and obscure inference.    It is to be conceded that the erasure of this clause will not of itself authorize the court to place any other or different interpretation upon the words not erased than would be required if the erased part had never existed; but where the language

remaining is in any degree obscure, uncertain, or ambiguous, we may read it in the light of the circumstances surrounding its execution, and in the present case the erasure is a circumstance not to be overlooked.

Again, it will be noted that at the date of the agreement there had been assessed against the property a paving tax payable in yearly installments, yet to mature. To guard against being held liable for any part of this tax coming due after she had ceased to have the benefit of the occupation of the property, the contract provides that appellant's warranty shall be made " subject to the unpaid installments of the paving tax maturing *after the date of the deed herein provided for,*" thus impliedly recognizing that the conveyance of the title, and not the making of the preliminary contract, marked the date at which her duty to care for the tax liens should cease. There is nothing in the contract which can be fairly construed as an express assumption of the taxes by the appellees, nor do we find anything from which such an implication can arise. Our holding that, in the absence of any agreement to the contrary, the duty of paying the taxes rested upon the seller in possession of the property, operates to overcome all the objections urged in appellant's argument upon the general proposition; and, in order to escape that obligation, she must point to some stipulation in the writing by which appellees assumed it. This has not been done.

The further point made — that the money paid as rent after the date of the contract was in fact a part of the purchase price, and that from such date appellees held possession in their right as purchasers, and not as tenants — cannot be sustained. There is no suggestion in the terms of the contract itself that prior to January 2, 1903, or such earlier date as they might elect to pay the full contract price, appellees had any other or greater right to possess or control the use of the premises than they had already had by virtue of their lease. On the contrary, the continued existence of the lease as such is expressly recognized by the

stipulation that " the present lease shall remain in force until the 2d day of January, 1903, at the option of the parties of the second part, who are to continue paying rent thereunder until the same terminates," etc.   Had the appellees failed to pay the rent as it accrued, we think there can be no reasonable doubt that the appellant would have availed herself of the remedy by landlord's attachment for its collection.   So, also, if the appellees had paid or tendered in full the agreed purchase price of $7,000, appellant could not have justified a refusal to convey simply because an installment of rent under the lease was overdue and unpaid. Save as to the right of appellees to demand and receive a deed upon the performance of the stipulated conditions precedent, the relation of the parties to the property, its possession and use remained wholly unchanged until January 2, 1903.

It is finally contended with much insistence that, even if it be conceded that appellant is bound to pay the taxes, appellees cannot be excused from tendering the full contract price, and failure to make a tender of such full payment within thirty days after the notice of forfeiture works an entire loss of all appellees' rights under the contract.   In our judgment, there is no rule of law or equity which necessitates such an inequitable result.   Appellant having undertaken to convey a clear title, it is repugnant to sound principle that she should be permitted to collect the full contract price upon tender of an incumbered title, especially when that incumbrance is for a definite, ascertainable sum, which can be readily adjusted by immediate payment by herself, or by conveyance subject to the tax, with proper abatement from the contract price. By insisting upon such removal of the lien by her, or compensation for its removal by themselves, the appellees ask nothing which she is not in good conscience bound to do, and they should not be compelled to part with their money for an incumbered title, and then be forced to resort to an inde-

3. SPECIFIC PER-
   FORMANCE:
   tender.

pendent action at law upon the warranty, which course, by reason of appellant's nonresidence, or her possible insolvency, or vexatious resistance, may prove a wholly inadequate remedy. It is a settled rule or maxim that when equity has once obtained jurisdiction it will determine all questions material to the accomplishment of full and complete justice between the parties, and that in suits for specific performance the court will, as far as possible, put the parties in the condition in which they would have been had the contract been fully and completely performed by both according to its terms, although in so doing it may be required to pass upon matters cognizable at law. *Cathcart v. Robinson,* 30 U. S. Rep. 278 (8 L. Ed. 120); *Beal v. Chase,* 31 Mich. 535; *Mc-Donald v. Davis,* 43 Ga. 356; *King v. Bardeau,* 6 Johns. Ch. 38 (10 Am. Dec. 312); *Wiswally v. McGowan,* 1 Hoff. Ch. 125; *Renkin v. Hill,* 49 Iowa, 270; *Green Bay Co. v. Miller,* 98 Iowa, 472.

Promptly on the very day when the deed was due from the appellant and its delivery had been demanded and refused, the appellees applied to a court of equity to enforce their rights in the premises, and by their petition not only pleaded the tender already made, but expressed their readiness, willingness, and ability to perform their agreement, and to pay whatever sum the court might adjudge to be due the appellant. This tender was broad enough to give the court cognizance of the entire controversy. It has often been held that in actions for specific performance, if the seller's title has failed as to a part of the property, or if it be found to be defective or incumbered, the purchaser may waive his right to repudiate the contract, and have performance enforced in his favor as far as the vendor is able to perform, with suitable and proportionate abatement from the contract price. *Townsend v. Blanchard,* 117 Iowa, 36, Am. & Eng. Enc. Law, volume 26, 176, note 7; *Jones v. Shackleford,* 5 Ky. 410; *Winne v. Reynolds,* 6 Paige, 407; *Sibert v. Kelly,* 22 Ky. 669; *Wintermute v. Carner,* 8 Wash.

585 (36 Pac. Rep. 490); *Brooks v. Isbell,* 22 Ark. 488; *Reece v. Holmes,* 5 Rich. Eq. 531; *Reese v. Hoeckel,* 58 Cal. 281; *Grant v. Beronio,* 97 Cal. 496 (32 Pac. Rep. 556); *Hunt v. Smith,* 139 Ill. 295 (28 N. E. Rep. 809). In the last-cited case it was held that in decreeing a specific contract for sale of land, the court, after giving the vendor an opportunity to remove a lien, and his failure to do so, may authorize the vendee to remove it, and reimburse himself out of his deferred payments on the land. Many other cases might be cited to the same substantial effect. The decree of the trial court was clearly within the rule of the authorities. The courts do not look with favor upon forfeitures, and when the party alleged to be in default appears on the date fixed by the contract, and tenders a performance which would be sufficient in equity, and upon its refusal promptly invokes the interposition and judgment of the court for a settlement of the dispute, offering to perform such judgment when entered, the court cannot be deprived of its right to take cognizance of the whole case and determine the entire controversy by any forfeiture clause in the contract, no matter how strict or stringent its terms.

Some question has been raised that the action at law was first in order of time, and that the rights of the parties should therefore be determined upon the issue joined in that case. Even if such priority in time (which **4. ACTIONS: equitable relief.** is by no means clear) be conceded, we do not regard it as a circumstance of controlling importance. With both actions pending before it, we see no reason why the court, without regard to which was first begun, might not have proceeded to hear and dispose of every material feature of the controversy in the equity proceedings.

The conclusions we have announced are decisive of the appeal, and without further discussion the judgment of the district court is in each case *affirmed.*