WISWALL *v.* McGOWAN AND OTHERS.

ON the 1st of August, 1834, a written agreement for the sale of land was entered into between the complainants and the defendant McGowan, who was the vendor. The fulfilment was extended from time to time down, as admitted, to the 9th of December, 1834. On the 29th of January, 1835, the defendant McGowan, agreed to sell the same premises to the other defendants. A sum of money was paid down then, and a further sum on the 30th. A deed was acknowledged on the 31st of January, and recorded on the 4th of February. The original bill was against McGowan alone on his contract with the complainants, and was filed the 3d of February, but without a notice of *lis pendens* in the clerk's office ; none being filed till the 23d of June, ensuing.

*Held,* that assuming the record of the deed to have been the day of its delivery, the grantees were not affected with constructive

notice of the suit, and upon the testimony held that no actual notice of the claim was proven.

The fulfilment of the contract being impossible, held upon the examination of the facts, that it was improperly made so by the defendant, against whom, had the property remained in his hands, performance would have been decreed.

It is settled law, that if the inability to fulfil an agreement is caused by an act of a party after a suit is commenced in this court relief by an assessment of damages may be given. And held, that if the act is unknown to the complainant, when his bill is filed, he may have the same relief. If the act extends to a part of the property only, performance may be decreed for the residue, and damages be assessed for that part. And where the remedy at law is lost, or is very precarious, such relief may be had here.

It seems that the time for performing a contract may be extended by parol. But if the party resumes negotiations for a fulfilment after the time has elapsed, and treats it as in existence and force, he will be held to have waived his strict right.

Where a contract was to have been performed in May, and was expressly extended to November, and the vendor was never in a state to perform until the 5th of December, and negotiations and various arrangements connected with it took place on the 9th of December—Held, that the agreement was thus preserved in force, and that the vendor was bound in order to rescind the contract, to fix a day by which it must be performed, and to give notice of it. This should be a reasonable time.

Oct. 9, 10, 11.
Nov. 4.

THIS cause was heard upon a bill and amended bill. The original bill made Andrew McGowan alone a party, seeking a specific performance against him of a certain written contract. This was filed on the 3d of February, 1835. Afterwards the bill was amended by making the other defendants parties, as purchasers of the premises, the subject of the contract, and charging them with notice of the complainants' rights, and upon other grounds seeking to avoid their conveyances.

The dates and facts are important and numerous, and are minutely stated in the opinion.

*Mr. D. B. Ogden*, for complainants.

*Mr. James Smith*, for defendant McGowan.

*Mr. C. Sandford* and *J. P. Hall*, for the other defendants.

THE ASSISTANT VICE-CHANCELLOR :—The original bill in this cause was filed on the 3d of February, 1835, against Andrew McGowan, for the purpose of compelling the execution of a certain written agreement for the sale of land, made between him and the complainants. The other defendants were afterwards brought in by amendment, having received deeds for the premises before the bill was filed, and the conveyances to them are sought to be set aside upon the ground of notice of the complainants' rights, and that no title passed to them under such conveyances.

I shall first examine the case as against these defendants, and then as against McGowan.

I. On the 1st of March, 1834, McGowan and the complainants entered into the agreement in question, by which McGowan agreed to sell to them all his land east of the Third Avenue for $38,000 ; payments to be made in the manner stated. The title was not in McGowan, but in his mother, and in a subsequent paper the land is spoken of as the land devised to him by the will of his mother, she being then and now continuing alive.

The time for the fulfilment of the agreement was not contained in it, but is stated to have fixed verbally for May, 1834, but it was extended by the assent of McGowan to the 15th of November, and subsequent arrangements were had on the 9th of December.

The complainant had made a sub-contract with one Reed to sell him a large portion of the property. The details of this transaction need not be gone into for the present purpose.

McGowan, in order to perform his agreement, had obtained a deed from his mother to Isaac Adriance, which that gentleman swears was to him in trust for Andrew McGowan, or for such persons to whom he should direct the property to be conveyed, (fol. 20.) That deed was probably not in Mr. Adriance's hands until the 9th of De-

1839.

Wiswall
v.
McGowan and
others.

cember. Between that date and the 12th of January, 1835, it was delivered up by Adriance to McGowan, and is stated to have been destroyed.

In the month of January, 1835, negotiations took place between the defendant Harris and Andrew McGowan, for a purchase of the property on behalf of himself and the other defendants. An agreement was entered into, and on the 29th of January, the sum of $1,350 was paid on account of the purchase. On the 30th of January, $2,660 66 more was paid, and a deed from Margaret McGowan, the mother, is dated that day. It is acknowledged on the 31st, and recorded on the 4th of February. Mortgages were given for the balance. The original bill was filed on the day previous, viz. the 3d of February; but no notice of *lis pendens* was filed until the 23d of June ensuing, the time when the bill was amended by bringing in Sandford and the other purchasers.

Now assuming that the day of the record was the day of the delivery of the deed and execution of the mortgages, there was no constructive notice to charge the defendants until the 23d of June, and there is no pretence of actual notice of the suit before the deed was recorded. Thus these defendants are unaffected with notice of the suit. The inquiry then is whether they had notice of the contract and the claim.

The answer of all except Hallett and Hall is an unequivocal denial of all notice or suggestion whatever. There is not the least evidence to oppose to this, but the loose statement of Adriance as to some conversation in a joking manner with some of them about the complainants filing a bill. (See fol. 81, 82.) It is manifest that nothing short of positive proof of notice before the reception of the deed will do ; and this testimony falls much below that.

I agree to the proposition of counsel, that notice to one tenant of common, not traced to his co-tenants, but denied by them, can affect his own share only.

Then as to the notice to Hall. In his answer (fol. 79, &c.,) he says, that some two or three months before

making the purchase of Mrs. McGowan, he had been informed that a negotiation had been on foot for the purchase of the property, but not of any of its particulars, and subsequently he was informed by Adriance and McGowan that the negotiation had fallen through, from the failure of the parties to comply. At that time he did not think of being concerned in a purchase of the land.

The doctrine of the court upon the notice which is to defeat a *bona fide* purchaser, certainly would never permit this notice to prevail. The notice must be so clearly proved, or necessarily inferred, as to make it fraudulent in the purchaser to take a conveyance in prejudice of the known title of another. (*Wyatt* v. *Bauvell*, 19 *Vesey*, 439. See 2 *Sugden on Vendors*, 255, Am. ed. 1836.)

That admitted by the defendant Hallett, arising from a casual observation of Reed, about two months before the purchase, that he had bought the Red House property, is equally loose and insufficient to affect his conscience with a fraud.

As to these defendants there remains but one point to be considered ; viz. the operation of the deed to Adriance. The counsel for the complainant insist, that it put the title out of Mrs. McGowan, so that her conveyance to Sandford could not take effect.

According to Mr. Adriance's statement of that deed, it left a legal estate in Mrs. McGowan until he procured a conveyance to be made to another. But suppose the deed was in existence and in Adriance's hands on the 4th of February, 1835, when the deed to Sandford was recorded. If he had no notice of that outstanding deed, the registry act protected him against it.

There is no view in which the title of these defendants under the conveyances to Sandford from Mrs. McGowan, can be shaken.

II. But if it is impossible to decree a performance as against Sandford and his co-purchasers, it is equally so against McGowan. The title, though once in him as to a part, under the deed to Adriance, is not in him now. The whole is now in the other defendants under the convey-

ance of the mother, unaffected with any equity; and no decree against him can put the land in the complainants.

Then the question is, whether this court will give any other relief by way of damages, and how they are to be ascertained.

It is a general rule, that the court has no jurisdiction authorizing the assessment of damages upon a breach of contract. Some exceptions have however grown up.

In *Denton* v. *Stewart*, July, 1786, there was a bill for specific performance of an agreement to assign a lease to the plaintiff. After the agreement, the defendant assigned the lease to another person for valuable consideration without notice. The bill only prayed specific performance. Sir Samuel Romilly states, that the fact of assignment did not appear either in the answer or in proof, but was stated at the bar. But in the report of the case by Mr. Cox, (1 *Cox's Ca.* 257,) it is twice stated, and from the Register's Book, that the assignment had been stated in the answer; and in *Greenaway* v. *Adams*, (12 *Vesey*, 401,) it is said by the court, that the inability to perform grew out of an act done by the party after the contract had been entered into. The master of the rolls directed a reference to inquire what damage the plaintiff had sustained, and decreed that the defendant should pay them with the costs of suit. He said that if the damages were merely nominal, the defendant had acted so dishonestly, that he ought to pay the costs. (*Reported*, 17 *Vesey*, 276, *n.* b. from the notes of Sir Samuel Romilly. Also 1 *Fowler*, 38.)

In *Greenaway* v. *Adams*, (12 *Vesey*, 395,) the Master of the Rolls said, when the bill was filed the plaintiff was right; insisting that the defendant should do what he could to give him a good title. Afterwards she rendered herself incapable of performing the contract. It is impossible therefore to decree performance of what she is unable to do. He proceeded to question the principle of *Denton* v. *Stewart*; but admitting that it was directly in point, he considered himself bound by it, and made the same order. He observed that there was no difference whether the

damages are to be assessed by a master or by an issue. But in *Todd* v. *Gee*, (17 *Vesey*, 278,) Lord Eldon said, " that his opinion was confirmed by reflection, that except " in very special cases it is not the course of proceeding in " equity, to file a bill for specific performance of an agree- " ment, praying in the alternative, that if it cannot be per- " formed, an issue or an inquiry before a master may be " had with a view to damages. The plaintiff must take " his remedy if he chooses it, at law : generally, I do not " say universally, he cannot have it in equity. In *Denton* " v. *Stewart*, the defendant had it in his power to perform " the agreement, and put it out of his power pending the " suit. The case, if not to be supported on that distinc- " tion, is not according to the principles of the court."

*Philips* v. *Thompson*, 1 *Johns. C. R.* 132. This case rests upon very peculiar circumstances. A remedy at law for the injury done to the plaintiff was probably unattain- able. The contract to compensate was by parol, and could not be sustained ; and the chancellor allowed an issue to ascertain the damages incurred. He cited and relied upon *Denton* v. *Stewart*, and *Greenaway* v. *Adams*.

*Woodcock* v. *Bennet*, (1 *Cowen*, 716,) is a strong au- thority for the course adopted in *Denton* v. *Stewart*. The decree of Chancellor Kent was, that the complainant was entitled to a specific performance of the articles, that is to a conveyance of one fourth part of the premises. But in- asmuch as it appeared that since the execution of the arti- cles, by parting with his right and title or otherwise, he had disabled himself from fulfilling the articles, and re- tained only a sixth part, the decree declared that the plain- tiff was entitled to a compensation in damages for the value of his claim under the articles, and a reference was directed to a master to ascertain the value of the fourth part. The decree was reversed, but upon other grounds. Justice Woodworth, who delivered the only opinion read, said that he inclined to think that the reference was pro- per to ascertain the damages, the appellant not having it in his power to convey one fourth.

So, in *Fisher's Heirs* v. *Kay*, (2 *Bibb*, 434,) it was de-

clared that where the vendor parts with the title whereby he is incapable to perform, it is a fraud upon the vendee for which the vendor shall answer in damages for the increased value of the land, up to the time of making the assessment.

Chancellor Kent, in the case of *Hatch* v. *Cobb*, (4 *Johns. C. R.* 559,) to some degree affects his positions, though not his decision, in *Philips* v. *Thompson*. There was evidence in that case that about six months after the acceptance of the last payment, the defendant repeatedly called for payment, and gave notice that if the defendant did not pay him, he should part with his interest in the land agreed to be conveyed. No payment was made, and the right was assigned to another. The chancellor said, the suit could not be sustained. The defendant had fairly disabled himself before the suit was brought, and this was known to the plaintiff. It was doubtful how far the court has jurisdiction to assess damages merely in such a case, in which the plaintiff was aware when he filed the bill that the contract could not be specifically performed. The bill was dismissed without prejudice to an action at law.

In *Kempshall* v. *Stone*, (5 *Johns. C. R.* 194,) the bill was for a specific performance. The defendant set up in his answer, that long after the agreement to convey, and some time before filing the bill, he had conveyed the land to another person, without notice to him of the agreement. It was to be inferred that the plaintiff knew of the conveyance a considerable time previous to the commencement of the suit. The question then arose distinctly as to sustaining the bill for damages. The bill was dismissed, the chancellor relying upon the fact, (which he says was a material circumstance,) that the plaintiff *knew* of the conveyance before he filed his bill. The remedy was perfectly clear at law.

A review of these decisions leads to this result : that whenever the inability to fulfil a contract arises before the bill is filed, whether produced by the party himself or not, and is known to the complainant, a bill cannot be sus-

tained for damages only. If such inability is caused by the act of the party after the suit has commenced, relief may be given; and also ift he act is unknown to the complainant, when he sues. If specific performance can be decreed as to a part, and the party has put it out of his power to fulfil the contract as to the residue by an act done since the agreement, the court will decree for that part, and assess damages for the residue. And lastly where the remedy is lost, or very precarious at law, and the complainant has an equitable case, the court will assess damages in his favor. As to matter of form, it may also be observed, that a reference to a master is as proper as an issue. Indeed most practitioners consider it more convenient and satisfactory.

The facts of the present case, to which these doctrines will apply, are these. The deed from his mother to Adriance, actually vesting the title in Andrew, enabled him to perform his contract, so far as to release the lands contained in such deed. What they were, will be afterwards stated. This deed remained in the hands of Adriance, at least from the 9th of December, 1834, to the 10th of January, 1835. On the 3d of February, 1835, the bill was filed. I do not find any proof of the complainants having knowledge that the deed to Adriance was given up when they filed their bill. It continued in the hands of Adriance till about the 10'h of January. The inference is, I think, justifiable, that they had no such knowledge. It is not pretended that they knew of the deed to Sandford.

If the question then is free from the difficulty as to jurisdiction, the important point is to be examined, whether the complainants are equitably entitled to this relief, or to what extent, and upon what rule of amount. I consider that the rules which must decide whether damages shall be given for a violation of a contract which the party cannot perform, must be the same as direct the court in enforcing such contract, when the party can fulfil it. The question then is, whether McGowan was justified in rescinding the contract, or refusing to perform it; and this justification may be found in the conduct of the complain-

ants, giving him an equity to cancel it, or in a legal defence against it.

The contract in this instance was to have been performed by May, 1834, and McGowan admits in his answer, that he agreed to extend the time to the 1st of November. He insists that such agreement was void. His counsel have not argued the point raised in the answer, that a contract may not be extended by parol. My impression is, that is allowable. See *Benedict* v. *Lynch*, 1 *Johns. C. R.* 370. *Lawrence* v. *Dale*, 3 *Johns. C. R.* 23. 17 *Johnson*, 437. There are, however, some cases at law to the contrary, when there is no consideration. *Miller* v. *Holbrook*, 1 *Wendell*, 317. 13 *Wendell*, 71. However, I am of opinion that time was never in this case made of the essence of the contract. See the cases, *Sugden's Vendors*, vol. i. 513, 517, and *Hepburn* v. *Auld*, 5 *Cranch*, 262. *Brashier* v. *Gratz*, 6 *Wheaton*, 207.

It was again extended, as he admits, until the 15th of November, at the request of the complainants. In the interim, and on the 13th of October, 1834, the complainants had agreed with Richard Reed, to sell him a portion of the property at $48,000. Part of this agreement was, that the complainant were to procure a trustee's deed from Adriance, trustee for Andrew McGowan, to him, Reed. The payments provided for were to be made to Andrew McGowan or his trustee. One payment was to be made of $4,000 by the 15th of November ensuing.

Reed was also to secure the sum of $6,000, by mortgage upon certain property in Franklin-street. And a receipt is endorsed on the agreement, dated October 15th, 1834, acknowledging the receipt in cash and securities of that sum, and releasing the Franklin-street premises.

On the 24th of October, 1834, a receipt is executed by Isaac Adriance, for $1,000 received of Reed, part consideration money mentioned in the above recited agreement, and stating that Reed was to pay the further sum of $3,000 on or before the 15th November ensuing, when, if the said Andrew McGowan did not give the said Reed a good title for the same from his trustee, the said sum of $1,000 was

to be returned to Reed; and if it should be furnished, the balance was to be secured by mortgage. Upon failure by Reed, the $1,000 was to be retained for damages.

There is an attempt, in the answer, to disavow the agency of Adriance. But after the admission in folio 22, as to his referring to Adriance, and the admission, folio 21, that he consented that the deed should be given direct to Reed, for the part purchased by him, I conclude that this receipt was given by Adriance as the agent of McGowan, and that he is to be considered as party to the arrangement.

When the complainants entered into the contract with Reed, they prepared an instrument for Mrs. McGowan to sign, agreeing to convey to Adriance, in trust for McGowan, a parcel of ground, describing it, and expressing the terms. These papers were not executed, but they show the knowledge of the complainants, that McGowan had not the title. Adriance also proves, that the complainants frequently called upon him before the 15th of November, or before the 9th of December, and urged him to procure the deed from Mrs. McGowan, of the part sold Reed, (folio 58.)

In the answer it is also admitted, that the defendant told Wiswall he was afraid he could not complete the bargain, as his family made difficulties; that he would lose $5,000, and would use his endeavors to fulfil it. That he must have four lots for his trouble, which Wiswall agreed to give him. This transaction took place on the 5th of December, 1835.

With respect to this deed from Mrs. McGowan, it is to be deduced from all the testimony, that it was not until after the 5th of December, 1834, that it was made out. Adriance states, that he thinks it was dated before it was proved, and that he may have had it in his possession some days before the 9th of December, but whether two, or three, or six days, he cannot tell. He fixes its proof as being made on the 9th of December. Until this deed was obtained, McGowan could not fulfil his agreement. It is also in evidence that he could have obtained this deed promptly, as Mr. Adriance believes, had the other parties

been prepared to fulfil the contract, and it is established, that McGowan came several times after the 1st of November to town, to receive payment of the money, and that Reed was not ready.

About the 15th of November, Reed called and wished time to pay the money until the 1st of December. Adriance informed him that the deed was not ready, and that he supposed the time would make no difference. He apprized McGowan of this. The bill charges an actual offer by Reed to Adriance of $3,000, on the 15th of November, and demand of the deed, and the answer admits information from Adriance to that effect, but Adriance disproves it.

It may be useful to pause at this stage of the inquiry, and ascertain the true situation of the parties on the 9th of December, 1834. McGowan had consented to the extension of the time for performance, to that day. He was never able to fulfil, until about the fifth, if as early. He had assented to the substitution of Reed, as a purchaser of a large part of the premises, and his attorney had received $1,000 on account. On the 9th of December the contract was in full force, and the complainants entitled to its execution.

On the 9th of December, various transactions take place, upon which I apprehend, the cause must chiefly be decided.

It is charged in the bill, that on that day the complainants were informed that the parties were ready to convey; that the day was spent at Adriance's office, arranging papers, &c., and every thing was arranged to the satisfaction of McGowan and his counsel, nothing remaining to be done, but for McGowan to receive the $3,000 from Reed, and deliver the papers. This $3,000 was the balance of Reed's cash payment of $4,000, to be made under the contract of 13th of October. It is also charged, that McGowan was so well satisfied with the securities, that he authorized Adriance to endorse $2,000, and interest, on the bond of complainants, and to allow the complainants to retain the residue. The $1,000 before paid was to be applied to satisfy certain lessees.

The answer fully admits the statement, that the arrange-

ments were made to the full satisfaction of the defendant and his counsel, but states, that $4,000 was to be paid, not $3,000. He denies that any final arrangement took place as to the additional security for $10,000, although if the payment had been made, that subject would not have formed any difficulty. He admits the proposed application of $1,000 for the lessees, and he admits that he was fully satisfied with the value of the securities proposed to be given, as additional security for $10,000, although he was not as to the title; which he left for the examination of his counsel; and he also admits the agreement to endorse the $2,000 and interest on the bond, to be given for the purchase money, and that the complainants might retain the $1,000.

It appears, that the complainants and McGowan spent a large part of the day at Adriance's office, expecting Reed to call with the money, and that, in anticipation of his calling, a fresh agreement was drawn up and signed, but left with Adriance, to be delivered upon reception of the money from Reed.

Then we find the important allegation in the answer, that on the 9th of December, McGowan assented to the fresh agreement, on the express condition that the complainants should, on that day, pay to him or Adriance, 4,000, otherwise, that it was to be void. And it is insisted, that as the old contract was at an end, and the new one conditional only, and the condition was not complied with, all right has ceased. Adriance, in his first examination, confirmed this statement, of the complainants being apprized on the 9th, that payment must positively be made on that day, or the contract should cease. Upon a subsequent examination, however, he states explicitly, that McGowan did not tell him that he would not take the money, until the day after the meeting, viz., the 10th; that McGowan never said to him that he would not execute the contract, until the day before thanksgiving day. The 9th was Tuesday; thanksgiving day was Thursday, the 11th. This, then, fixes the 10th of December as the

date of McGowan's first intimation of a refusal, and this made to Adriance.

On the 10th Adriance wrote to Reed, informing him that McGowan would not take the money; on the same day Reed informed him, that it was only yesterday he had notice that McGowan was ready to deliver the deed. That a person was absent, which prevented the widow, (Mrs. Brown,) furnishing funds, but that no time should be lost. On Saturday the 13th, Reed called at Adriance's office with Wiswall and Price, and offered Thompson's check for the $3,000. Adriance considered the check as good as the money, but declined accepting it. On the 16th of December, they make a written demand for performance, proffering certain sheriff's certificates of the land at York-ville, to be given as security. No objection was taken that these were not satisfactory, as to that part of the contract which related to additional security.

There is another fact, of moment. Adriance, as before observed, was first apprized by McGowan, that he would not fulfil the contract on the 10th, and then wrote to Reed. He swears that the first time he informed Wiswall of this, was Friday the 12th, the day after thanksgiving day, and on Saturday, the offer of the check was made. Now, certainly, notice to Reed was not enough to justify the breaking of the contract. The complainants were the actual parties with McGowan, and had a material interest to call for performance. Notice was due to them.

The question then is, as to whether the default of the complainants, entitled McGowan to rescind the agreement. It will be observed, that the original contract fixed no time for performance, but the testimony supplies it, and proves an extension to the 15th of November. The sub-contract with Reed, was assented to by McGowan, and by that as modified by the receipt, the fulfilment was to be on the 15th of November. On that day, neither party was ready, and McGowan took no step to fix a time for performance.

The 9th of December appears to have been agreed upon mutually, to meet and settle the matters, but there is neither allegation nor proof, that McGowan prescribed that

day as the one on which the money must be paid, or the contract be at an end. He never made such a limitation, till the 10th of December. He was not able to have done it before the 5th, from his own inability to perform. He does not apprize the complainants of his determination until the 12th. It was manifestly a contract kept open by the assent of all parties until the 10th, and the proper notice of its being intended to be cancelled, not given until the 12th. Now, it is no longer questionable, that time may be made of the essence of a contract of sale. In this case I should conclude, if it were necessary to pass upon the point, that it was not made so by the agreement of the 13th October, as adopted in the receipt of the 24th, and that is the strongest part of the defendant's case on this head. But at any rate, that condition was waived. Either party to a contract, where no time has been fixed, or performance at the appointed time has been waived, may limit a day at which it must be fulfilled. But this must be a reasonable period, according to the nature of the contract, affording the party a reasonable time to make his preparation, and of this period, due notice must be given. It seems to me impossible, to hold that such a course was pursued by McGowan towards the complainants, in this instance.

*Next.* The other ground mentioned, upon which performance might be refused, was some substantial legal defence in the defendant McGowan. The only thing of this nature urged, is the alleged insufficiency of the contract, in the description of the land to be conveyed.

I have lately had occasion to examine this subject, and came to the conclusion, that where a contract referred to the subject matter, but by a vague, insufficient description, the defect might be supplied by other documents, coming from, or adopted by the party making the contract, and made pending and connected with the transaction. (*Cogswell* v. *Burtis*, Oct. 7, 1839.)

The original agreement in this case was very defective, as to the property intended. It is thus only: " Sale of " land east of Third Avenue, at $38,000. All Marsh Mea-

" dow and water right thrown in, subject to the lease and " conditions to Minell Platt." If this lease had been produced in evidence, and contained a full description, I consider it would have been sufficient. It is, however, stated in the bill, that it covered but part of the property.

But, when the complainants contracted with Reed, their agreement contains a full description of one parcel of the land, by metes and bounds. The receipt, (exhibit C.,) identifies Reed as entitled to have a good title from McGowan's trustee, and for lands included in the agreement between himself and Wiswall and Price. McGowan in his answer, (folio 14,) says, that he consented that the title to the part of the property for which the complainant's had agreed with Reed, (as agent, he believes, of Hannah Brown,) should not pass through the complainants, but that a deed should be given directly to Brown. Again, he says, (folio 28,) that to enable the complainants to fulfil their alleged contract with Reed, for a sale of part of the land, he procured from his mother a deed of the land alleged to have been sold by the complainants to Reed. Adriance also establishes, that the deed was drawn expressly to enable the complainants to comply with their contract with Reed.

I think it is thus made out, that the land comprised in the deed to Adriance, was that contained in the agreement with Reed ; and that deed vested the title of such lands in McGowan, and thus, as to such lands, the designation and description is ample.

But again, in McGowan's answer to the amended bill, he says, that after the abandonment, &c., he sold to Harris the aforesaid tracts of land and premises, agreed to be sold to the complainants, as mentioned in his former answer. The deeds, he states, were delivered. This admission is a clear identification of the property. However, as to all the land, except what was to be conveyed to Reed, it appears that McGowan never could convey it, and that the complainants knew of this, at least as early as October, 1834. The misrepresentations as to ownership, are not proven nor admitted. There can be no allowance for

that portion of the property. But the complainants were entitled to call for what McGowan could convey, even if less than the whole. (*Sugden on Vendors*, Am. ed. 1836, page 301.)

The result, in my opinion, is, that there was no ground upon which the defendant, McGowan, was justified in annulling the contract, and destroying the deed from his mother, at the time he did. And the complainants have, since that act, been diligent and prompt in asserting their rights.

I have taken but little notice of the paper signed on the 9th of December, because it was not delivered, and did not amount to an agreement. The agreement to allow McGowan four lots being admitted, he will be entitled to an allowance for them.

The decree will be as follows:—

The bill to be dismissed with costs, as to defendants Sandford, Hall, Graham, Harris and Hallett.

An order of reference to one of the masters of the court, to assess the damages incurred by the complainants, by reason of the refusal of Andrew McGowan to fulfil his contract set forth in the pleadings, and stated to have been made in February or March, 1834, as follows:

The master to ascertain what part of the whole premises conveyed to the defendant Sandford, by deeds bearing date the 30th day of January, 1835, by Margaret McGowan, was included in the contract between Richard Reed and the complainants, dated the 13th of October, 1834, and to ascertain what would be a proper proportion of the purchase money of $35,000, on the 1st day of March, 1834, for such parcel. And to estimate the damages sustained, by reason of the refusal to convey the same.

The usual clause for examining parties, &c.