MARY ANN BURNAP

*v.*

MARY J. SHARPSTEEN *et al.*

*Filed at Ottawa January 16, 1894.*

1. DEED—*delivery—how shown.* A deed may be delivered by words without acts, or by acts without words, or by both acts and words; and after the deed has been signed, sealed and acknowledged, any acts or words which clearly manifest an intention to consummate and complete it, and to part absolutely and unconditionally with it and all control over it, are sufficient to give legal existence to it as a deed, and to constitute a sufficient delivery.

2. Where the delivery of a deed is denied by the grantees therein, and the witnesses called to prove a delivery fail to testify to any acts or words amounting to a delivery, their general statement that the instrument was delivered will be regarded as a mere legal conclusion on their part, rather than the statement of a fact, and therefore incompetent, and can not be considered on the question of delivery.

3. SAME—*wrongful delivery of deeds left in escrow.* Where deeds and papers are made out, sealed and acknowledged for the exchange of real estate, and are left in escrow with the clerk of an agent of one of the parties, to hold until a certain release of a mortgage is procured and another incumbrance is reduced to a certain amount, and then to be delivered to the respective parties, the deeds so deposited will not become operative until the execution and delivery of the releases of the mortgages or the performance of the conditions upon which they are to be delivered, or the acceptance of the deeds by the grantee.

4. Until performance of the conditions upon which deeds are placed in escrow, the depositary will have no authority to part with them or to assume to deliver them to the grantees therein named. And when the agent of one of the parties obtains possession of the deeds before the conditions are performed, this act will be fraudulent and tortious, and no rights will pass by the delivery of such deeds or their tender.

5. SAME—*delivery by one having no right to same.* Where a deed for land is placed in escrow, not to be delivered until the grantee therein performs a certain condition, and the agent of the grantee, before such performance, gets such deed from the custodian and gives the same to the grantee, the attempted delivery will be an unauthorized and void act, and the deed will pass no title.

6. SAME—*tender of copy.* Where a deed left in escrow, to be delivered only upon the performance of a condition, is lost, no valid delivery
15—149 ILL.

ery or tender can be made. An effectual tender can only be made of the original deed.

7. CONTRACT—*for the exchange of lands—gross and unreasonable delay of performance.* Where time is not originally of the essence of a. contract for the sale or exchange of lands, but one party has been guilty of gross, vexatious, unreasonable or unnecessary delay or default in relation to it, the other party becomes entitled, by notice, to limit a. reasonable time within which the contract shall be performed by the other, and in default of obedience of such notice the court will not enforce its specific performance, but will leave the parties to their strictly legal rights.

8. SAME—*limiting time of performance by notice.* A verbal contract for the exchange of land provided that A should convey to B four houses and lots, subject to a mortgage of $2500 on the same and another lot, and that B should convey to A thirteen lots, upon four of which was a. mortgage, which B was to have released as to one of the lots and reduced to $1500 on the other lots, and B was to procure a release of A's mortgage on the lot of A included in the first named mortgage. C, the agent of B, had the parties interested come to his office to execute the deeds, which was done, but B failing to procure the releases of the mortgage as agreed, A objected to the delivery of her deed, when, by agreement, the several deeds were left with D, a clerk of C, to be held in escrow until the proper releases should be procured by B. After repeated efforts by A to have the contract carried out, A, through her agent, notified the agent of B that unless the releases were made and delivered within twenty-four hours, A would rescind the contract. No objection was made, at the time, that the notice fixed so short a time. C, the agent of B, obtained possession of the deeds and papers and tendered to A her deed for the lots, but did not tender any release of the mortgage, and delivered A's deed to B, which was placed on record. A then filed her bill to cancel the deed to B as a cloud on her title, and B, pending the hearing, tendered A the releases and a copy of the deed from B, the original of which was lost: *Held*, that A was entitled to the relief sought.

9. SAME—*of performance where time is not of the essence of.* Where deeds for the exchange of lots are placed in escrow, to be delivered only on performance of a condition by one of the parties to procure the release of certain mortgages, but no time is fixed for the execution of the releases, they, by implication of law, must be executed and delivered within a reasonable time.

10. And when the party has had ample time in which to procure the releases, the other party may, by notice, fix a reasonable time in which to perform the contract, after which he may declare the contract forfeited, though time is not made of the essence of the contract.

11. Where the notice requires performance by the end of the next day, and no objection is made as to the inadequacy of the time allowed, and a tender is made which proves ineffectual on other grounds, the notice will be sufficient.

APPEAL from the Circuit Court of Winnebago county; the Hon. JAMES SHAW, Judge, presiding.

Messrs. GARVER & FISHER, for the appellant:

When a deed is deposited in escrow until the happening of some condition, and is delivered in fraud of the grantee's rights, no title will thereby pass. *Everts* v. *Agnes,* 4 Wis. 343; *Railroad Co.* v. *McCullough,* 59 Ill. 166; *Land Co.* v. *Peck,* 112 id. 408; *Stone* v. *Duvall,* 77 id. 475.

At the time of the getting and recording of the deeds and filing of the bill, the conditions set forth in the testimony and in the cross-bill by appellee Sharpsteen were not performed. The deed was absolutely void when placed upon record, and was a cloud upon appellant's title, which a court of equity will cancel and remove. *Stanley* v. *Valentine,* 79 Ill. 544.

Contracts for the sale of land must be performed or rescinded within a reasonable time, although time is not of the essence of the contract. *Ditto* v. *Harding,* 73 Ill. 117.

Parties may make time material, and it may be considered material though no part of the contract itself, as, where one party fulfills all the conditions of the contract, he may demand a like performance of the other party within a reasonable time or on the day named for performance, and on default may rescind. *Murphy* v. *Lockwood,* 21 Ill. 617; *Glover* v. *Fisher,* 11 id. 673.

All contracts for the sale of land, where time is not of the essence thereof, must be performed or rescinded in a reasonable time, and if there has been any unreasonable delay that can not be explained consistently with good faith, equity will always hesitate to enforce a specific performance. If there be any unfair or reprehensible means used in obtaining the

making of the contract, equity will never enforce a specific performance. *Taylor* v. *Merrill*, 55 Ill. 52.

When a deed has been delivered without authority, the grantor may recover it by action, or have it removed as a cloud upon his title. *Prustman* v. *Baker*, 30 Wis. 644.

The delivery of a deed by one in whose possession it is placed to be delivered only upon condition, before compliance with the condition, is invalid. Such deed passes no title to the grantee, and the grantor may assail and overthrow it. *Robbins* v. *Magee*, 76 Ind. 382; *Smith* v. *Bank*, 32 Vt. 314; *Black* v. *Shreve*, 13 N. J. Eq. 455; *Land Co.* v. *Peck*, 112 Ill. 408; *Hoig* v. *Adrian College*, 83 id. 269.

Mr. N. C. WARNER, for the appellee Mary J. Sharpsteen:

The equitable rights of parties are not limited to such as exist at the filing of the bill, but they will be determined as they exist at the hearing. *Winkel* v. *Reynolds*, 6 Paige, 403; *Brow* v. *Hoff*, 5 id. 241; *Beebe* v. *Dowd*, 22 Barb. 255.

Burnap, after going so far at the meeting of October 28, 1892, could have been fully compensated in damages. *Short* v. *Kieffer*, 13 Ill. App. 523; *Peeler* v. *Levy*, 16 N. J. Eq. 332; *Seton* v. *Slade*, 3 Lead. Cases in Eq. 67.

Appellant received the rents and profits of the property Mrs. Sharpsteen was to have in the exchange, until a receiver was appointed, after the hearing of this cause. She was not harmed any, and no forfeiture was ever declared. The case, in this respect, is much like *Lombard* v. *Sinai Congregation*, 64 Ill. 485.

Equity does not enforce forfeitures. 37 Ill. App. 101.

The part performance prevented rescission, and left a remedy only for compensation. *Short* v. *Kieffer*, 13 Ill. App. 523.

If it be admitted that appellant had the right of rescission prior to the transactions of October 28, 1892, she so far consummated the deal on that day as to prevent her from avoiding the agreement, and as to limit her rights to an action for

damages only. *Insurance Co.* v. *Travelstead,* 29 Ill. App. 659; *Perry* v. *Pearson,* 30 id. 392; *Schmohl* v. *Fuldick,* 34 id. 198.

It was not within the legal competency of Charles G. Burnap to limit the time to twenty-four hours within which he should require performance or close the deal. Fry on Specific Per. 1062, 1064.

The transactions of October 8 and 28, 1892, implied the existence of the contract. Ibid. secs. 1039, 1083.

While it may be admitted that notice of rescission may be given to the agent, in this case so great was the haste of appellant's agent that he did not pause and hesitate long enough to reach the agent, and therefore reach the principal. Serving Clark would be no more effective than serving the writer before he was employed by Mrs. Sharpsteen. *Dillon* v. *Anderson,* 43 N. Y. App. 238.

The record is destitute of proof that Clark had any authority to receive notice for Mrs. Sharpsteen.

It is not every trivial breach that entitles a party to rescind. *Graves* v. *White,* 87 N. Y. 467.

The acts of Burnap operated as a waiver down to the transactions of October 28, 1892. After that, Mrs. Sharpsteen had a reasonable time in which to perform. Commencing suit on Monday, November 1, 1892, was not reasonable time. *Dormat* v. *Fuller,* 120 N. Y. 558.

While what is reasonable time is a question of law, the trial court, like a jury, determines that. 119 N. Y. 355.

The court is powerless to interfere with what occurred on October 28, 1892, as there is no pretence of either fraud or mistake. *Lathers* v. *Keog,* 109 N. Y. 587.

If rescission is allowed, it is upon the concession, always, of a restoration of what the opposite party has paid. *Tice* v. *Zinsser,* 76 N. Y. 552.

Before Mrs. Burnap could have any relief, she must have offered to restore Henry Johnston and B. A. Knight to their former positions. *Gould* v. *Bank,* 86 N. Y. 84.

·Mr. JUSTICE BAILEY delivered the opinion of the Court: ∘

This suit grows out of an oral contract between Mary A. Burnap and Mary J. Sharpsteen, both residents of the city of Rockford, for the exchange of certain real estate. The negotiations which resulted in the contract, took place during the summer and early autumn of the year 1892, and were carried on, on the part of Mary A. Burnap, by Charles A. Burnap, her husband and agent, and on the part of Mary J. Sharpsteen, by B. A. Knight, her agent. Mrs. Burnap was the owner of four houses and lots situated in South Rockford, which were then subject to a mortgage for $3000, but on which payments had been made so as to reduce it to $2500. Mrs. Sharpsteen was to take these four houses and lots, subject to the incumbrance of $2500, and was to assume the incumbrance, and as the mortgage also covered another lot owned by Mrs. Burnap, it was also agreed that Mrs. Sharpsteen should procure for Mrs. Burnap a release of that lot therefrom.

For this property, Knight, acting on behalf of Mrs. Sharpsteen, agreed to procure a conveyance to Mrs. Burnap of thirteen unimproved lots in West Rockford. These lots were not owned by Mrs. Sharpsteen, but nine of them were owned by Henry Johnston and four by Frank A. Youngquist. The Johnston lots were unincumbered, but the Youngquist lots were incumbered by a mortgage for $247.32 upon each, held by John Wolvin, of Pecatonica, Winnebago county. It was agreed that one of the Youngquist lots should be released from its mortgage, and conveyed to Mrs. Burnap free from incumbrance, and that the incumbrances on the other lots should be reduced to $175 each, making $525 in all, and that Mrs. Burnap should execute to Johnston her notes for $975, secured by mortgage on the lots to be conveyed by him, thus making a total incumbrance of $1500 on the lots to be conveyed to Mrs. Burnap.

During the progress of the negotiations, it was ascertained that the holder of the $2500 mortgage on Mrs. Burnap's property would release the lot which was not to be conveyed on payment of $300 to be credited on the mortgage.

Afterwards, on the 8th day of October, 1892, Mrs. Burnap and her husband were notified by Knight that everything was in readiness for closing up the transaction, and they were requested by him to come to his office that day for that purpose. On going to Knight's office, they found Johnston, Youngquist, Mrs. Sharpsteen and Knight there, and also H. G. Clark, a clerk in Knight's office, and Miss Call, his stenographer. They also found the several deeds and the mortgage necessary to consummate the transaction, drawn up and ready for execution. These various instruments were signed and acknowledged by the proper parties, and after that was done, Mr. Burnap, on looking them over, discovered that there was no release of Mrs. Burnap's lot from the $2500 mortgage, nor any release by Wolvin of the Youngquist lot which was to be conveyed to Mrs. Burnap free of incumbrances from the mortgage thereon, nor any reduction by Wolvin of the mortgages on the three other Youngquist lots to $175 each. On making this discovery, Burnap inquired of Knight whether those releases had been procured, and on being informed that they had not, he declared his unwillingness to leave the deeds until everything was satisfactorily arranged. Knight, or one of the other parties present, thereupon suggested that the deeds and mortgage be placed in the custody of Clark, to be held by him until the releases were obtained, and to be then delivered by him to the proper parties. This suggestion was adopted, and the several instruments above mentioned were thereupon placed in an envelope and delivered to Clark, to be held by him until the releases were duly executed, and to be then delivered to the several grantees therein named, and Clark placed them in the Forest City Bank for safe keeping.

From that day until the 28th day of the same month, Burnap, as he testifies, called upon Knight nearly every day to ascertain whether the releases had been executed. It seems that during that interval, Wolvin executed a release of his mortgage on one of the Youngquist lots, and reduced the amount of the incumbrance on the other lots to $175 each, but no release of Mrs. Burnap's lot from the $2500 mortgage was procured. On the 28th day of October, Burnap met Clark on the street and asked him to notify Knight that, unless that release was obtained by the close of the following day, the trade would be declared off, and he would proceed no further with it. This notice was on the same day communicated by Clark to Knight. On the following day, Knight procured from Clark the deeds and mortgage which had been deposited with him, and went to the residence of Mr. and Mrs. Burnap, for the purpose of making a delivery of the deeds and mortgage to the respective grantees named therein, and meeting Burnap in the street near his house Knight proceeded to deliver the deeds executed by Mr. and Mrs. Burnap, conveying the four houses and lots, to Mrs. Sharpsteen, and the mortgage and notes to Johnston, and offered to deliver the deeds from Youngquist and Johnston conveying the thirteen lots in West Rockford, to Burnap. Burnap inquired whether he had procured the release of the lot from the $2500 mortgage, and being answered in the negative, declined to accept the deeds, and Knight, as it appears, then handed them to Johnston to be held by him for Mrs. Burnap. On the same day, the deeds to Mrs. Sharpsteen and the mortgage to Johnston were placed on record.

October 29, 1892, was Saturday, and on the following Monday, Mrs. Sharpsteen attempted, in person and by tenants, to take possession of the premises described in the deeds to her. On the same day she executed a written lease of the premises to a tenant for a term of five days and placed the same on record, and on the day following, she conveyed the four houses and lots, by a deed expressing a consideration of $6500 to

Hattie E. Burroughs, and had that deed placed on record. On that day, which was November 1, 1892, the original bill in this case was filed by Mrs. Burnap against Mrs. Sharpsteen and Hattie E. Burroughs, alleging, in substance, the facts above set forth, and praying for a decree annulling the contract for an exchange of property, and cancelling the deeds purporting to convey the complainant's property to Mrs. Sharpsteen, and ordering the defendants to execute proper conveyances of the premises to the complainant, and also a general prayer for relief.

Subsequently, the bill was amended by making Johnston a party defendant, and alleging, among other things, in substance, that the deeds and mortgage were delivered by the parties to Clark in escrow, to be held by him until the performance of certain conditions, viz., the execution of the above mentioned releases, such releases to be procured within a reasonable time; that for the purpose of defrauding the complainant, and to get the full benefit of the conveyances from her, Mrs. Sharpsteen caused the deeds to be taken from Clark's possession and filed for record, and caused a pretended and fraudulent conveyance of the premises to be immediately made to defendant Burroughs and placed on record, and caused the mortgage to Johnston to be delivered to him and recorded; that the defendants, and Knight their attorney were all conspiring together to avoid the performance of the conditions upon which the deeds were left in the hands of Clark, and that because of the failure to perform such conditions, and because of such fraudulent acts, the complainant has elected to disaffirm the whole arrangement, and to refuse performance on her part, and to insist that her deeds be surrendered up and cancelled; that the pretended delivery of the deeds and mortgage by Clark, and the record thereof, were fraudulent and without authority and conveyed no title, and that the deed to defendant Burroughs should be cancelled, and the mortgage to Johnston should be delivered up and cancelled and held for naught.

The bill was duly answered and a replication was filed, and at the April term, 1893, of the Circuit Court, the cause came on for hearing on pleadings and proofs. At the close of the hearing, as the defendants were about to close their evidence, defendant Sharpsteen produced and read in evidence a release of complainant's lot from the $2500 mortgage, such release being dated and purporting to have been acknowledged April 27, 1893. She also produced the receipt of the clerk of the court showing that she had paid all costs in the case up to that date, and she was thereupon permitted to file her cross-bill, praying for a specific performance of the contract between her and the complainant for an exchange of properties, and that the deeds from the complainant and husband to her delivered to Clark be adjudged valid and effectual in law to vest in her the title to the property therein described.

The cross-bill was duly answered, and the court thereupon rendered a decree dismissing the original bill for want of equity, and ordering the complainant to pay all costs accruing subsequent to the payment of costs by Mrs. Sharpsteen, and awarding a specific performance of the contract, in accordance with the prayer of the cross-bill. From this decree, the complainant in the orginal bill now appeals to this court.

The first question to be considered is, whether the evidence shows a delivery of the deeds and mortgage, so as to pass title, at the time the parties were together in Knight's office on the 8th day of October, 1892. It appears from the testimony of Burnap—and in this he is not disputed—that he and the complainant went to Knight's office on that occasion upon the representation by Knight that everything was in readiness for closing up the transaction, and it is apparent that he and the complainant signed and acknowledged the instruments in which they were named as grantors, relying upon the truth of that representation. Burnap also testified—and as to this also there is no substantial conflict in the evidence—that after the papers were signed and acknowledged, he took them into

his hands for examination, and on looking them over, he dis-
covered that the releases stipulated for had not been procured;
that he thereupon declared his unwillingness to leave the deeds
until everything was satisfactorily arranged, and that Knight
or one of the others present then suggested that the papers be
placed in the hands of Clark, to be held by him until the re-
leases should be obtained.

It is true both Knight and Mrs. Sharpsteen swear, in gen-
eral terms, that the papers were all delivered, before they were
placed in Clark's hands, and Knight testifies that they were
delivered to Clark for the mere purpose of preventing their
being placed on record until the releases should be obtained.
But neither of these witnesses attempts to state the mode in
which the delivery was made, or to detail any acts or words
on the part of either Mr. or Mrs. Burnap, indicating an in-
tention to absolutely and unconditionally yield all dominion
and control over the instruments signed and acknowledged
by them.

A deed may be delivered by words without acts, or by acts
without words, or by both acts and words, and after the deed
has been signed, sealed and acknowledged, any acts or words
which clearly manifest an intention to consummate and com-
plete it, and to part absolutely and unconditionally with it
and all control over it, are sufficient to give legal existence
to it as a deed, and to constitute a sufficient delivery. See
*Brooks* v. *The People*, 15 Ill. App. 570, and authorities there
cited. But as the witnesses have failed to testify to any acts
or words amounting to a delivery, their general statement that
the papers were delivered must be regarded as a mere legal
conclusion on their part rather than the statement of a fact,
and therefore incompetent, and not entitled to be considered
as bearing upon the question whether a delivery was actually
made.

There being no proof of any absolute delivery of the deeds
on October 8, 1892, so as to pass title, the utmost that can

be said of the transactions of that day is, that the deeds were placed in Clark's hands in escrow, to be delivered and become effectual only upon the execution and delivery of the releases stipulated for in the contract. Until those releases were executed, Clark had no authority to part with the deeds, or to assume to deliver them to the grantees therein named. Knight obtained possession of them from Clark, as the evidence shows, upon the pretence that he would act in the matter as Clark's attorney, and undertook to deliver them to the respective grantees, the release of Mrs. Burnap's lot from the $2500 mortgage not then having been executed. Apart from the obvious impropriety of the agent of one of the parties volunteering to act as the attorney of the custodian of the deeds, and in that guise getting possession of and delivering them, it is manifest that any delivery by the custodian or his attorney before the performance of the condition, viz., the execution of the release to Mrs. Burnap's lot from the mortgage, was merely tortious and fraudulent, at least so far as Mrs. Burnap was concerned, and was wholly ineffectual to pass title to her grantee. It follows that the attempted delivery of the deeds by Knight on the 29th day of October, 1892, was an unauthorized and void act, and gave Mrs. Sharpsteen no title to the property described in the deeds delivered to her, and placing the deeds in which Mrs. Burnap was named as grantee in the hands of Johnston, though placed there professedly for Mrs. Burnap, was a tortious and unauthorized diversion of them from the possession of their proper custodian, and can not be resorted to by Mrs. Sharpsteen, or by Knight, her agent, as an act of performance of the contract with Mrs. Burnap.

It thus appears that down to the date of the decree, no valid or lawful delivery had been made to Mrs. Burnap of the conveyances running to her. On the 29th day of October, Knight had no right to deliver them, and they were wrongfully placed by him in the hands of Johnston, and at the date of the hear-

ing, they seem to have been mislaid or lost, so that they then could not be produced for the purpose of being delivered or tendered. The decree declares the conveyances to Mrs. Sharpsteen valid and effectual to pass title to her, while there has been no valid or lawful delivery or tender to Mrs. Burnap of the conveyances running to her, and as they are lost, such delivery or tender can not now be made. Copies of these deeds were produced at the hearing and tendered, but it is manifest that an effectual tender could only be made of the original instruments, and that a tender of copies could be of no avail.

But as already shown, the delivery of the deeds to Clark on October 8 was in escrow, the condition to be performed before the second delivery being, the execution of the releases stipulated for. The time within which those releases were to be delivered was not fixed by the contract, and they were therefore, by construction of law, to be executed within a reasonable time. The releases from the mortgages on the Youngquist lots were executed prior to October 28, and need not be further considered. But the release of Mrs. Burnap's lot from the $2500 mortgage had not then been executed, notwithstanding the repeated and almost constant importunities of Mrs. Burnap's husband and agent. No reason appears why it was not or could not have been executed between the 8th and 28th days of October. The holder of the mortgage seems to have been ready to execute the release at any time, on payment of $300 on the mortgage, and Mrs. Sharpsteen claims to have been able at any time to pay the money. Both were living in Rockford, and no reason is given why the execution of the instrument was so long delayed. Under these circumstances, the question arises whether any and what effect is to be given to Mr. Burnap's notice to Knight, given October 28, that unless the release was executed and the transaction closed up by the end of the day following, he should, in effect, declare the contract forfeited and at an end.

Of course, it must be admitted that, in the original agreement, time was not expressly made of the essence of the contract, and, so far as appears, the subject matter of the agreement and the attending circumstances were not such as to make time of the essence of the contract by implication. The rule, however, seems to be well supported by authority, that where time is not originally of the essence of the contract, but one party has been guilty of gross, vexatious, unreasonable, or unnecessary delay or default in relation to it, the other party becomes entitled, by notice, to limit a reasonable time within which the contract shall be performed by the other, and in default of obedience to such notice, the court will not enforce specific performance, but will leave the parties to their strictly legal rights. *Miller* v. *Rice,* 133 Ill. 315; *Wiswall* v. *McGowan,* 1 Hoff. Ch. 125; *Bullock* v. *Adams' Executors,* 20 N. J. Eq. 367; Fry on Specific Performance, sec. 1062.

It seems that Mrs. Burnap, in purchasing the Youngquist lots, was intending to build a house for her residence on the lot which was to be conveyed to her free from incumbrance, and that she desired to erect her house thereon that season, and before the setting in of winter, and that her plans in that respect were well known to Mrs. Sharpsteen and her agent, and the necessity of an early consummation of the trade for that purpose was the occasion of the constant importunity of Mr. Burnap to have the matter closed up at the earliest practicable moment. While these facts alone were probably insufficient to make time of the essence of the contract by implication, they are circumstances to be taken into consideration in determining whether there was vexatious and unreasonable delay on the part of Mrs. Sharpsteen in the performance of the conditions upon which the deeds were placed in escrow.

We are inclined to the opinion that, in view of all the facts, there was such vexatious and unreasonable delay as placed it within the power of Mrs. Burnap to limit by notice, the reasonable time within which the contract should be closed up.

But the point is made that even if that was so, the time limited by the notice was not reasonable, and the notice was therefore ineffectual. There probably would have been force in this position if it had been taken at the time. But no complaint was then made that the time was not sufficiently long. On the contrary, Knight seems to have acted upon the theory that the notice was valid, and getting the deeds which had been left in escrow into his possession, attempted, within the time thus limited, to consummate the trade by making final delivery of them to the respective grantees. He made no pretence then that sufficient time had not been given, but assumed, apparently, that the delivery of the deeds was all that was necessary, and ignored Mrs. Sharpsteen's obligation to procure the release. We are disposed to hold, then, that, under the circumstances, Mrs. Sharpsteen's failure to procure and deliver the release within the time limited by the notice justified Mrs. Burnap in rescinding the contract, at least to the extent of barring Mrs. Sharpsteen of the right, on subsequent tender of the release, to obtain specific performance in a court of equity.

The decree in favor of Mrs. Sharpsteen on her cross-bill is clearly erroneous. This results from the conclusion just stated, that Mrs. Burnap had a right to and did rescind the contract, at least to the extent of cutting off the right to the relief sought by that bill. That portion of the decree is also erroneous for the reason that there has been no delivery or tender to Mrs. Burnap of the deeds which were to be executed to her. Clearly, before the complainant in the cross-bill can be entitled to a decree for specific performance, she must show performance or a tender on her part, and that she has not done.

We are also of the opinion that the court erred in dismissing the original bill for want of equity. That bill was brought to obtain a decree cancelling and ordering the surrender of the deeds which were tortiously taken from the possession of

the custodian with whom they had been placed in escrow and delivered to the grantees. There can be no question that, at the time the bill was filed, the complainant therein was entitled to the relief prayed for. Has that right been taken away by anything which has since occurred? By their original answer, the defendants took the position, in substance, that Mrs. Sharpsteen was not bound by the terms of the contract to procure and deliver to the complainant the release in question, and that position seems to have been insisted upon by them until near the close of the hearing. Then the pleadings were so amended as to admit her obligation to procure the release, and a release, executed, as its date shows, just at the close of the trial, was produced and tendered to the complainant, and all costs up to that date were paid by Mrs. Sharpsteen.

The position thus finally taken by the defendants was not only an admission by them that there was equity in the bill when filed, but it was also tantamount to an admission that the deeds held in escrow had been delivered wrongfully, and in violation of the conditions upon which they were placed in escrow, and that they were therefore improperly in the hands of the defendants. No offer is made to restore them to the proper custodian, or to undo the wrong which had been perpetrated by their delivery. But while the defendants endeavored to perform, *ex post facto*, the condition to procure the release, nothing was done to effectually meet the allegation of the bill, that no legal delivery, and no valid or effectual tender had been made to the complainant of the deeds which, by the agreement, were to be executed to her. Clearly, until that is done, the equities of the bill are not answered.

The decree will be reversed, and the cause will be remanded to the Circuit Court, with directions to dismiss the cross-bill for want of equity, and to enter a decree in favor of the complainant in accordance with the prayer of the original bill.

*Decree reversed.*